# EXHIBIT A



# Gender-Based Misconduct Policy and Procedures for Students

### Gender-Based Misconduct Office
### Student Conduct and Community Standards



## Columbia University
### IN THE CITY OF NEW YORK

# GENDER-BASED MISCONDUCT POLICY
# AND PROCEDURES FOR STUDENTS

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................................1

SCOPE OF THE POLICY AND PROCEDURES ........................................................................3

GENDER-BASED MISCONDUCT POLICY FOR STUDENTS ("POLICY") ...............................4

PROHIBITED CONDUCT ........................................................................................................4

DEFINITIONS OF GENDER-BASED MISCONDUCT ...............................................................4

IMPORTANT RELATED CONCEPTS ......................................................................................8

SCENARIOS .........................................................................................................................11

RESOURCES FOR STUDENTS (Confidential and Non-Confidential) ..................................13

PROCEDURES FOR RESPONDING TO STUDENT GENDER-BASED MISCONDUCT
("PROCEDURES") ...............................................................................................................15

REPORTING GENDER-BASED MISCONDUCT ......................................................................15

RIGHTS AND RESPONSIBILITIES DURING THE DISCIPLINARY PROCESS ........................17

WHEN A REPORT IS MADE: INTAKE; ACCOMMODATIONS AND INTERIM MEASURES; ASSESSMENT;
 AND RESOLUTION OPTIONS ............................................................................................20

SANCTIONS AND OTHER REMEDIES ..................................................................................31

APPEAL PROCESS ...............................................................................................................33

UNIVERSITY RECORDS ......................................................................................................34

AMENDMENTS ...................................................................................................................35

APPENDICES........................................................................................................................35

NEW YORK STATE STUDENTS' BILL OF RIGHTS.................................................................36

RESOURCE GUIDE FOR STUDENTS INVOLVED IN GENDER-BASED MISCONDUCT ...........39

Effective August 29, 2017

# I.   INTRODUCTION

Columbia University, Barnard College, and Teachers College[1] are committed to fostering an environment that is free from gender-based discrimination and harassment, including sexual assault and all other forms of gender-based misconduct. The University recognizes its responsibility to increase awareness of such misconduct, prevent its occurrence, diligently investigate reports of misconduct, support students and others who experience gender-based misconduct, and respond fairly and firmly when students violate University policy. The University is also committed to supporting students accused of gender-based misconduct who go through the disciplinary process. In addressing issues of gender-based misconduct, all members of the University must respect and care for one another in a manner consistent with our deeply held academic and community values.

The Gender-Based Misconduct Policy and accompanying Procedures define gender-based misconduct, highlight available resources for students, and set procedures for addressing gender-based misconduct involving students. The Policy and Procedures reflect the University's commitment to a safe and non-discriminatory educational environment, consistent with Title IX, the Violence Against Women Act ("VAWA"), and New York State Education Law 129-B.

Here are several important points about gender-based misconduct that the Policy addresses:

- Sexual harassment, sexual assault, sexual exploitation, gender-based harassment, stalking, domestic violence, and dating violence are all forms of gender-based misconduct. In some instances, behavior that is not sexual in nature can be considered gender-based misconduct.
- Gender-based misconduct can occur between strangers or acquaintances, or people who know each other well, including between people involved in an intimate or sexual relationship.
- Gender-based misconduct can be committed by anyone regardless of gender identity, and it can occur between people of the same or different sex or gender.

Most fundamentally, the University does not tolerate any form of gender-based misconduct. Students who experience gender-based misconduct are encouraged to seek help and can bring complaints in the University disciplinary process set out in this document. Those found responsible will be sanctioned in accordance with this Policy. Students who experience gender-based misconduct can also pursue criminal and civil processes, in addition to or instead of the University's process.

This Policy and accompanying Procedures are part of the University's multifaceted approach toward eliminating gender-based misconduct in our community, which includes: (1) educational programs; (2) services and resources for those affected by gender-based misconduct; (3) accessible, prompt, and fair methods of investigation and resolution of reports of misconduct; and (4) protections designed to prevent recurrence.

---

[1] For the purposes of this Policy and Procedures, the term "University" includes Columbia University and Teachers College. Barnard College has its own Policies and Procedures, available at: http://barnard.edu/doc/titleix, that apply when a Barnard student is a Respondent. In cases where a Barnard student is the Complainant and a Columbia or Teachers College student is the Respondent, Columbia's Gender-Based Misconduct Policy and Procedures apply. When this Policy and Procedures refer to just one of the institutions, the names Columbia, Barnard, and/or Teachers College are used. See "Scope of the Policy and Procedures" on page 3 for more information.

### Overview of Contents

This Policy first specifies prohibited conduct and provides illustrative scenarios, which may be helpful in understanding the range of gender-based misconduct addressed by the Policy. It then describes available resources for students.

The Procedures discuss reporting options, rights and responsibilities of students engaged in the disciplinary process, campus resources, and the measures and accommodations that may be available in particular cases to support and assist students. The Procedures also spell out available resolutions to reports of gender-based misconduct, including the investigation, adjudication, and sanctioning processes that apply when students are accused of misconduct, as well as students' rights throughout the process.

The last section includes the New York State Students' Bill of Rights and a comprehensive listing of resources available to students affected by gender-based misconduct, including phone numbers, campus locations and websites.

**Nothing in the Policy or the Procedures shall be construed to abridge academic freedom and inquiry, principles of free speech, or the University's educational mission.**

## II.    SCOPE OF THE POLICY AND PROCEDURES

This Policy governs gender-based misconduct involving University students[2] that: (1) occurs on any University campus or in connection with University programs or activities; (2) creates a hostile environment for University students; or (3) involves a Respondent (a person accused of gender-based misconduct under this Policy) who is a current undergraduate, graduate, or professional school student at the University. The Policy applies regardless of a person's gender, gender identity, gender expression, sex, sexual orientation, age, race, nationality, class status, religion, disability, pregnancy, predisposing genetic characteristics, military status, criminal convictions, domestic violence status, familial status, or other protected status.[3]

The accompanying Procedures describe how to report an incident of gender-based misconduct and the investigation and disciplinary process that applies when the Respondent is a current undergraduate, graduate, or professional school student at the University, including students on leave of absence and those actively pursuing degree requirements regardless of current registration status.[4] The University's Gender-Based Misconduct Office[5] ("the Office") serves as the central point of contact for all University students affected by gender-based misconduct.

Reports of gender-based misconduct can be made online at: http://studentconduct.columbia.edu/, http://sexualrespect.columbia.edu/, or directly to the Title IX Coordinator at: titleix@columbia.edu. Students of Barnard College and Teachers College may contact the Office directly or through the Title IX Coordinator at their school:

- Barnard College: http://www.barnard.edu/doc/titleix/
- Teachers College: http://www.tc.edu/titleix/

If the Respondent is affiliated with the University, but is not a University student, different procedures apply to the investigation and disciplinary process as described here:

- If a Respondent is a Columbia employee or other person doing business with Columbia, the investigation and disciplinary processes described in Columbia's Employee Policies and Procedures on Discrimination, Harassment, Sexual Assault, Domestic Violence, Dating Violence, and Stalking apply.
- If the Respondent is a Barnard student, Barnard employee, or other person doing business with Barnard College, the investigation and disciplinary processes described in the Barnard College Grievance Procedures for Gender-Based Misconduct, Sexual Assault, Domestic Violence, Dating Violence, and Stalking apply.
- If the Respondent is a Teachers College employee or other person doing business with Teachers College, the investigation and disciplinary processes described in the Teachers College Policy on the Protection from Harassment apply.

**Note:** While this Policy and the Procedures identify the University office or employee who will typically perform certain roles or duties, the University may designate other University offices or employees to perform any roles or duties described in the Policy or Procedures. Additionally, any reference to "days" in this Policy and these Procedures refer to business days.

---

[2] This Policy and these Procedures are modified as appropriate to apply to elementary and secondary school students enrolled in University programs. For more information regarding minors on Columbia's campus please visit: http://Policylibrary.columbia.edu/protection-minors-columbia-reporting-suspected-abuse-and-maltreatment-minors. For information regarding minors on Teachers College's campus please visit: http://www.tc.columbia.edu/policylibrary/public-safety/minors---policies-and-guidelines-for-the-supervision-of-minor-children-on-campus/

[3] For the purposes of this Policy, references to he/she also include they and any other preferred pronouns.

[4] This Policy and the accompanying Procedures apply to any reports made after September 1, 2017, regardless of when the incident occurred.

[5] The University's Gender-Based Misconduct Office is part of the University's Student Conduct and Community Standards Office.

# III.   GENDER-BASED MISCONDUCT POLICY FOR STUDENTS ("POLICY")

## A. Prohibited Conduct

Gender-based misconduct includes a broad range of behaviors focused on sex and/or gender that may or may not be sexual in nature. This misconduct can occur between strangers, acquaintances, or people who know each other well, including people involved in an intimate or sexual relationship.  It can be committed by anyone regardless of gender identity, and can occur between people of the same or different sex or gender. One form of prohibited conduct can occur separately from or simultaneously with another form of prohibited conduct. Before defining specific forms of prohibited conduct, here is important basic information about consent, non-consensual conduct, and gender-based misconduct.

**Consensual sexual conduct requires affirmative consent. New York State law defines affirmative consent as a knowing, voluntary and mutual decision among all participants involved. Any non-consensual sexual conduct is gender-based misconduct.**

More specifically:

- Sexual conduct that is coerced or forced is not consensual.
- A person cannot give consent if he or she lacks the ability to make or understand the decision because of disability, consumption of alcohol or drugs, or if he or she is unwillingly restrained.
- A sleeping or unconscious person cannot give consent.
- The use of alcohol or drugs does not justify or excuse gender-based misconduct and never makes someone at fault for experiencing gender-based misconduct.

## B. Definitions of Gender-Based Misconduct

To determine whether alleged conduct falls within a definition of prohibited conduct below, the standard applied is whether a reasonable person would consider the alleged conduct to fall within that definition.

It is a violation of University Policy to commit the following acts:

### Sexual Assault: Intercourse

Any form of vaginal, anal, or oral penetration, however slight, by a penis, object, tongue, or finger without a person's affirmative consent.

### Sexual Assault: Contact[6]

Any sexual contact, including sexual touching for the purpose of sexual gratification of either party, without a person's affirmative consent. Sexual touching includes contact under or over clothing with the breasts, buttocks, genitals, groin or inner thigh, or touching another with any of these body parts; making another person touch any of these body parts under or over clothing; or the emission of ejaculate on the clothing or body of another person without that person's consent.

### Domestic Violence

The use or threat of physical violence or sexual assault that is directed toward (1) a current or former spouse or intimate partner; (2) a person with whom one shares a child; or (3) anyone who is protected from the Respondent's acts under the domestic or family violence laws of New York. This violation includes behavior that seeks to establish power and control over another person by causing fear of physical or sexual violence.  Domestic violence can be a single act or a

---

[6] This definition encompasses a range of sexual conduct that could also fit within the Policy definition of Sexual Harassment. The Gender-Based Misconduct Office, in consultation with the appropriate Title IX Coordinator(s), will determine whether the allegation(s) should be treated as Sexual Assault: Contact or Sexual Harassment, depending on the specific conduct and surrounding circumstances of the allegation(s).

pattern of behavior, based on the frequency, nature, and severity of the conduct.

*Examples of this type of violence include hitting, kicking, punching, strangling, or other violent acts, including violence or threats of violence to one's self under certain circumstances, violence or threats of violence to one's partner, or the family members, friends, pets, or personal property of the partner.*

### Dating Violence

The use or threat of physical violence or sexual assault that is directed toward a person who is or has been in a social relationship of a romantic or sexually intimate nature with the Respondent. This violation includes behavior that seeks to establish power and control over another person by causing fear of physical violence or sexual assault. Dating violence can be a single act or a pattern of behavior, based on the frequency, nature, and severity of the conduct.

*Examples of this type of violence include hitting, kicking, punching, strangling, or other violent acts, including violence or threats of violence to one's self under certain circumstances, violence or threats of violence to one's partner, or the family members, friends, pets, or personal property of the partner.*

### Sexual Exploitation

Non-consensual abuse or exploitation of another person's sexuality for the purpose of sexual gratification, financial gain, personal benefit or advantage, or any other illicit purpose. Acts of sexual exploitation include, but are not necessarily limited to:

- Non-consensual streaming, sharing, or distribution of images, photography, video, or audio recording of sexual conduct, nudity, or state of undress when and where there is a reasonable expectation of privacy, without the knowledge and affirmative consent of all participants;
- Observing, photographing, videotaping, or making any other visual or audio recording  of sexual conduct or nudity or state of undress when and where there is a reasonable expectation of privacy,

without the knowledge and affirmative consent of all participants;
- Exposing one's genitals in non-consensual circumstances; or
- Inducing incapacitation for the purpose of making another person vulnerable to gender-based misconduct.

### Stalking

A course of unwanted attention that is repeated or obsessive, directed toward an individual or a group and that is reasonably likely to cause alarm, fear, or substantial emotional distress. Stalking may take many forms, including lying in wait for, monitoring, and/or pursuing contact. Stalking may occur in person or through telephone calls, text messages, unwanted gifts, letters, e-mails, surveillance, or other types of observation and communication.

### Gender-Based Harassment

Gender-based harassment can occur if students are harassed either for exhibiting what is perceived as a stereotypical characteristic of their gender or for failing to conform to stereotypical notions of masculinity or femininity, and that harassing conduct unreasonably interferes with another student's education or participation in educational programs or activities, or creates an intimidating, hostile, demeaning, or offensive academic, campus, and/or living environment.

The following describes some conduct that may be gender-based harassment:

- Acts of aggression, intimidation, stalking, or hostility based on gender or gender stereotyping; or
- Threats or non-consensual disclosure of a person's gender identity or that a person is transgender or non-binary (i.e. "outing")

For more information regarding "hostile environment," see the following page.

## Sexual Harassment

Unwelcome sexual advances, requests for sexual contact, and other verbal, physical, or visual conduct of a sexual nature constitute sexual harassment when:

- Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's academic, co-curricular, or student life activities;
- Submission to or rejection of such conduct by an individual is used as the basis for academic evaluation, grades, advancement or student life decisions affecting that individual (i.e. "quid pro quo"). Quid pro quo sexual harassment can occur whether a person resists and suffers the threatened harm, or a person submits and avoids the threatened harm, and can occur even if the person delays in reporting the harm;
- Such conduct is intentional, serves no legitimate purpose, and involves contact with parts of another individual's body that may cause that person to feel degraded or abused;
- When the behavior is for the purpose of gratifying the actor's sexual desire; or
- Such conduct has the effect of unreasonably interfering with another student's education or participation in educational programs or activities or such conduct creates an intimidating, hostile, demeaning, or offensive academic, campus, and/or living environment

The following describes some of the acts that may be sexual harassment:

- Conduct of a sexual nature, such as intentional and non-consensual physical contact which is sexual in nature, such as touching, pinching, patting, grabbing, poking, or brushing against another person's intimate body parts;
- Unwanted sexual advances, propositions or other sexual comments, such as: (1) subtle or obvious pressure for unwelcome sexual activities; or (2) sexually oriented gestures, noises, remarks, jokes or comments or questions about a person's sexuality or sexual experience which are sufficiently severe or pervasive to create a hostile environment;
- Threats or non-consensual disclosure of a person's sexual orientation (i.e. "outing"); and/or
- Displaying pictures, posters, calendars, graffiti, objects, promotional material, reading materials, or other materials that are sexually demeaning or pornographic in nature.

## "Hostile Environment" in the Context of Sexual and Gender-Based Harassment

A hostile environment may arise when unwelcome conduct of a sexual or gender-based nature unreasonably interferes with a student's ability to participate in or benefit from an education program or activity, or creates an intimidating, threatening, demeaning, or offensive academic, campus, and/or living environment.

In evaluating a hostile environment, the University will consider the totality of the known circumstances from the point of view of a reasonable person, including but not limited to:

- The frequency, nature and severity of the conduct;
- Whether the conduct was physically threatening;
- The effect of the conduct on the Complainant's mental or emotional state;
- Whether the conduct was directed at more than one person;
- Whether the conduct arose in the context of other discriminatory conduct; and
- Whether the conduct unreasonably interfered with the Complainant's educational or work performance and/or University programs or activities.

A single, isolated incident of sexual or gender-based harassment may, based on the facts and circumstances, create a hostile environment. The more severe or pervasive the conduct, the less need there is to show a

repetitive series of incidents to demonstrate a hostile environment.

## Retaliation

Any adverse action or threatened action, taken or made, personally or through a third-party, against someone who has reported a gender-based misconduct complaint (a Complainant) or has been the subject of a gender-based misconduct complaint (a Respondent) or any other individual (a Witness, Third-Party Reporter or Advisor etc.) because the individual engages with the Office and/or the disciplinary process.

- All individuals and groups of individuals, not just a Respondent or Complainant, are prohibited from engaging in retaliation. Retaliation can refer to actions or threatened actions by any individual, including students and others who are not engaged with the Office.
- Retaliation includes threatening, intimidating, harassing, or any other conduct that would discourage a reasonable person from seeking services; receiving protective measures and accommodations; reporting gender-based misconduct; or participating in the disciplinary process as a Complainant, Respondent, Witness, Third-Party Reporter or Advisor.
- Retaliation includes maliciously and purposefully interfering with, threatening, or damaging the academic or professional career of another individual, before, during or after the resolution of a report of gender-based misconduct under this Policy.
- Reports made in good faith, even if the allegations are ultimately determined to be inaccurate, are not considered retaliation.

Reports found to have been made frivolously or in bad faith may constitute retaliation and/or may be considered by the Sanctioning Officer if an individual is otherwise found responsible for a violation of the Policy.

Retaliation may also include violations of a no contact directive and/or other interim measures, in conjunction with any of the behavior described above, during the course of an investigation.

- If the alleged retaliation occurs between the Complainant and the Respondent while a matter is pending, these allegations may be investigated separately through the Dean's Discipline process or folded into the pending investigation, based on the circumstances of the allegations.
- Allegations of retaliation by other parties, i.e., not between the Complainant and the Respondent, will be investigated separately by the Office when the allegations involve gender-based misconduct. Any other allegations of retaliation will be investigated and adjudicated through the Dean's Discipline process.

## C. Important Related Concepts

**Complainant**

The person making the allegation(s) of gender-based misconduct.

**Respondent**

The person alleged to have committed gender-based misconduct.

**Party**

Complainants and Respondents are sometimes referred to as parties. (A "party" is someone who is directly involved in a proceeding.) Others, such as witnesses and advisors, are not considered parties.

The definitions that follow provide additional guidance regarding the prohibited conduct previously discussed.

**Affirmative Consent**

Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity.

- Consent can be given by words or actions, as long as those words or actions clearly communicate willingness to engage in the sexual activity. It is important not to make assumptions about consent. If there is confusion or ambiguity, participants need to stop sexual activity and talk about each person's willingness to continue.

- Consent cannot be procured by the use of physical force, compulsion, threats, intimidating behavior, or coercion.

- Consent cannot be obtained from, or given by, a person who is incapacitated.

- Consent to one form of sexual activity does not imply consent to other forms of sexual activity.

- Consent to engage in sexual conduct with one person does not imply consent to engage in sexual conduct with another person.

- Silence or the lack of resistance, in and of itself, does not demonstrate consent. Again, it is important not to make assumptions; if confusion or ambiguity arises during a sexual interaction, it is essential that each participant stops and verbally clarifies the other's willingness to continue engaging in the sexual contact or conduct.

- Consent can be withdrawn at any time, including after it is initially given. When consent is withdrawn or can no longer be given, sexual activity must stop.

- Previous relationships or previous consent for sexual behavior is not consent to sexual activity at another time. However, established patterns of consent in a specific relationship may be considered when evaluating whether affirmative consent was given on a particular occasion.

- Accepting a meal, a gift, or an invitation to get together, including on dating apps, does not imply or constitute consent.

- The definition of consent does not vary based on a participant's sex, sexual orientation, gender identity, gender expression or relationship status.

**Coercion**

Coercion is verbal and/or physical conduct, including intimidation and explicit or implied threats of physical, emotional, or other harm, that would reasonably place an individual in fear of immediate or future harm and that is used to compel someone to engage in sexual conduct against their will.

- Coercion is more than a one-time effort to persuade, entice or attract another person to engage in sexual conduct. When a person makes clear that they do not want to participate in a particular form of sexual conduct, that they want to stop or that they do not want to go beyond a certain type of sexual conduct, continued pressure can be coercive.

- In evaluating whether coercion was used, the frequency, duration and intensity of the other person's verbal or physical conduct or threats are all relevant, as is the degree of confinement or isolation to which the person was subjected. Coercion may be evidenced by an interaction that

assumes that a party will be harmed or restrained if they do not engage in sexual conduct (e.g., "You can leave, but only after you perform oral sex.")

## Intimidation

Intimidation is any threat of violence or other threatening behavior directed toward another person or group that reasonably leads the target(s) to fear for their physical well-being or to engage in sexual conduct for self-protection. A person's size alone does not constitute intimidation; however, a person can use their size or physical power in a manner that constitutes intimidation (for example, by blocking access to an exit).

## Force

Force refers to the use or threat of physical violence to compel someone to engage in sexual activity. Examples of physical violence include hitting, punching, slapping, kicking, restraining, choking, strangulation and/or brandishing or using any weapon.

## Incapacitation

Incapacitation occurs when an individual lacks the ability to knowingly choose to participate in sexual conduct. A person who is incapacitated cannot make a rational, reasonable decision because the person lacks the ability to understand his or her decision.

- Incapacitation may be associated with a person lacking consciousness; being asleep; being involuntarily restrained; or having a disability that impedes consent. *Under New York State law, a person under the age of 17 lacks the capacity to give consent.*
- Whether sexual conduct with an incapacitated person constitutes gender-based misconduct depends on whether the Respondent knew or should have known of the Complainant's incapacitation, based on objectively and reasonably apparent indications when viewed from the perspective of a sober, reasonable person in the Respondent's position.

- Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent. See the following for additional discussion on how drugs and alcohol can affect consent.

### How drugs and alcohol affect consent

- The use of alcohol or other drugs is never an excuse for committing gender-based misconduct and never diminishes anyone's responsibility to obtain informed and freely given consent.
- The use of alcohol or other drugs never makes someone at fault for experiencing gender-based misconduct.
- The impact of alcohol and other drugs varies from person to person and there is no specific amount of alcohol or drugs consumed that leads to incapacitation.

In evaluating whether a person is incapacitated due to the consumption of alcohol, drugs or intoxicants, the following factors will be considered:

- Whether the Complainant understood the "who, what, when, where, why or how" of the sexual conduct; and
- How the Complainant was physically affected by the consumption of alcohol or drugs, which may include, but is not limited to, warning signs such as having slurred or incomprehensible speech, vomiting, unsteady gait, imbalance, bloodshot eyes, combativeness, emotional volatility, or notable change in personality.

Because the impact of alcohol and other drugs varies from person to person, the amount of alcohol and/or drugs a person consumes will not ordinarily be sufficient, without other evidence, to prove that they were incapacitated under this Policy.

Another effect of alcohol consumption can be memory impairment, or forgetting entire or partial events (sometimes referred to as "blackout" or "brown-out"). A person may experience this symptom while appearing

to be functioning "normally," including communicating through actions or words that seem to express an interest in engaging in sexual conduct. Whether sexual conduct with a person who is "blacked-out" constitutes gender-based misconduct depends on the presence or absence of the observable factors indicating that a person is also incapacitated, as described above. Total or partial loss of memory,

without more, is insufficient to demonstrate incapacitation.

The use of alcohol or drugs can create an atmosphere of confusion and can lower inhibitions. All parties should be aware of, and carefully consider, the potential consequences of the use of alcohol or drugs. Every individual is responsible for ensuring there is mutual, affirmative consent prior to engaging in sexual conduct.

## D. Scenarios

The following scenarios help illustrate some applications of the Policy:

Pat and Dana met at a party. They spent the entire party getting to know each other and dancing. Dana had four shots of tequila and four beers over the course of the evening. At one point, Dana went to the bathroom and Pat noticed that Dana staggered when she returned. Dana's friend told Pat that Dana had been vomiting. Pat volunteered to take Dana home. When they arrived at Dana's dorm room, Pat began kissing Dana and proceeded to have sex with Dana. When Dana woke up in the morning, Dana asked Pat what happened that evening. Pat told Dana that they had sex and that Dana had asked to have sex.

*Pat having sex with Dana while Dana was incapacitated is a violation of this Policy. A reasonable person could have concluded that Dana was incapacitated due to her alcohol use because Pat saw Dana stumbling and knew Dana had vomited in the bathroom. Dana was therefore not able to give consent.*

Taylor and Hong have been dating for a few months. On several occasions, Taylor and Hong have engaged in consensual sexual intercourse. One night, Hong and Taylor were making out when Hong said, "I don't feel like having sex tonight." Taylor continued to kiss Hong and took off Hong's clothing despite Hong's verbal and physical objections. Eventually, Hong became silent and submitted to Taylor's insistence to have sex.

*Taylor did not have Hong's consent to engage in sexual intercourse, which is a violation of this Policy. Hong objected to having sex and Taylor ignored these objections. Although Taylor and Hong have previously had consensual sexual intercourse, Hong did not consent to sexual conduct on this particular evening. In addition, silence does not imply consent.*

Peyton and Jordan were in the hallway of their residence hall with a group of their neighbors on the floor, joking around and telling stories. Peyton placed his arms around Jordan's waist as they continued their conversation and then touched Jordan's breasts. Jordan removed Peyton's hands from her body. A few minutes later, Peyton stated she did not understand why Jordan was making such a big deal about Peyton touching her.

*Jordan did not consent to Peyton's sexual touching, which includes contact under or over clothes. Peyton's behavior constitutes intentional physical contact of a sexual nature without affirmative consent - a violation of this Policy.*

Kai and Lee met at an off-campus location and quickly realized they were both Columbia students. Lee asked Kai for their number and suggested that they meet for lunch on campus. A few hours later, Lee began to call and text Kai, asking Kai out on a date. Kai told Lee repeatedly that they are not interested and did not want to date them. After that, Lee found Kai's campus address and began to send cards and flowers to Kai's room. Kai wrote to Lee after the first card arrived and asked Lee to leave them alone.  Then Lee waited for Kai outside of their class to invite them to dinner.

*Lee's repeated contact with Kai is stalking – a violation of this Policy. Kai declined Lee's multiple requests to go on a date. Additionally, Kai asked Lee to leave them alone and to stop visiting their dorm.*

Melissa and Joe are married and live in off-campus housing. After a stressful meeting with his advisor concerning his dissertation, Joe came back to the apartment and berated Melissa about the apartment being messy. Joe grabbed the dinner that Melissa ordered and threw it in her direction, though he did not hit her. When Melissa tried to leave the apartment, Joe grabbed her by the wrist. In the struggle to get away from Joe, Melissa fell and hit her head on the table.

*Joe's actions are domestic violence, a violation of this Policy. Any use or threat of physical violence toward a domestic partner or spouse constitutes domestic violence.*

Bette and Tina had been dating for a few months. Tina, an aspiring photographer, asked Bette to pose in the nude for her portfolio. Bette and Tina got into an argument regarding Tina's photography. Shortly after they broke up, a mutual friend informed Bette that Tina had posted Bette's nude photographs on Facebook.

*This is a violation of this Policy. The use and distribution of photographs of another person's unclothed body or body parts, without permission, regardless of whether they originally consented, is sexual exploitation.*

Ben and Jake are two members of the men's baseball team and had been secretly dating one another for several months. While Jake identified as gay, he was not "out of the closet" to his friends or family. Ben similarly identified as gay, but unlike Jake he was open about his sexual orientation with his friends and family prior to coming to the University. After dating for several months, Ben became frustrated with Jake's unwillingness to be open in their relationship, and he repeatedly threatened to "out" Jake to their teammates and Jake's family, despite Jake expressing an unwillingness to disclose his sexual orientation.

*Repeated threats or non-consensual disclosure of a person's sexual orientation that create a hostile environment are sexual harassment, a violation of this Policy. An investigation under this Policy would evaluate whether Ben's behavior created a hostile environment for Jake and violated the Policy's prohibition of sexual harassment.*

## E. Resources for Students

**Immediate Assistance**

The University encourages all students affected by gender-based misconduct to seek assistance. Seeking assistance promptly may be important to ensure a student's physical safety or to obtain medical care, emotional support, or other support. It may also be necessary to preserve evidence, which can assist the University and/or law enforcement in responding effectively. Assistance is available twenty-four hours a day, seven days a week. The Resource listing at the end of this document provides contact information for the campus and community resources available to help.

**Confidentiality, Privacy, and Required Referrals**

The University values the privacy of its students, employees, and other community members. Community members should be able to seek the assistance they need without fear that the information they provide will be shared more broadly.

Some resources on campus are confidential and will not share any identifying information with others, except as required by law in emergency circumstances.

Other resources are not confidential but will protect students' privacy to the greatest extent possible and share information with other staff only on a need-to-know basis. Among these "non-confidential" resources are faculty and most staff (including Teaching Assistants and students employed by the University and acting in an official capacity)[7], who are required by federal and state law to provide relevant information to the Gender-Based Misconduct Office or the Title IX Coordinator. Staff in the Gender-Based Misconduct Office, in consultation with the appropriate Title IX Coordinator(s), are responsible for connecting students with supportive resources and working to ensure community safety.

Appendix B includes a chart summarizing the confidentiality obligations of different categories of University employees with respect to reports of gender-based misconduct. Any of the staff listed as Resources will be able to explain his or her referring obligations in more detail.

**Confidential Resources**

Confidential resources on campus include: Sexual Violence Response, Clergy, Counseling and Psychological Services, the Office of Disability Services, the Ombuds Office, and Healthcare Providers[8]

*Students may use these resources even if they decide not to make a report or participate in University disciplinary proceedings or the criminal justice process.*

University advocates, counselors, clergy, disability services professionals, the Ombuds Office staff, and healthcare providers can provide students with immediate and long-term help. Conversations with them are confidential, except in certain emergencies as described in the Resources list in Appendix B.

They will listen, help access additional assistance, and explain options for obtaining additional support from the University and others. They can also arrange for medical care or accommodations and accompany students, or arrange for someone to accompany students, to seek such care. These individuals are familiar with the University's disciplinary process, can explain what to expect, and provide support while disciplinary or criminal processes are pending.

---

[7] At Teachers College, responsible employees including instructional and administrative employees.

[8] The Teachers College Office of Access and Services for Individuals with Disabilities is <u>not</u> a confidential resource.

**Additional Resources (Non-Confidential)**

<u>Gender-Based Misconduct Office</u>

The Gender-Based Misconduct Office supports and provides assistance to students affected by gender-based misconduct, whether they are a Complainant or a Respondent. The Office does not act as an advocate, but is a neutral resource available to all students. The Office refers students to available resources, offers appropriate protections, and is responsible for investigating and adjudicating reports of gender-based misconduct involving students, and coordinating the disciplinary process when necessary. The Office can provide support and assistance immediately following an incident, throughout the disciplinary process, and throughout a student's time at the University. Contact information for the Gender-Based Misconduct Office is in the Resources listing following the Procedures.

<u>Title IX Coordinators</u>

The Title IX Coordinators for Columbia and Teachers College are responsible for overseeing the University's response to Title IX reports and complaints, and identifying and addressing any patterns or systemic problems revealed by such reports and complaints. The Title IX Coordinators oversee the administration of this Policy and the Procedures in a neutral and equitable manner. Columbia's Title IX Coordinator also participates in the investigation of complaints as needed.

Title IX coordinators from Barnard, Columbia, and Teachers College will work collaboratively when students from different institutions are involved in the disciplinary process. Contact information for the Title IX Coordinators is in the Resources listing following the Procedures.

<u>Law Enforcement</u>

Students may report gender-based misconduct to the New York City Police Department, the Manhattan District Attorney's Office, or the local law enforcement agency where the misconduct occurred if the misconduct occurred outside of New York City. The University and criminal justice systems work independently from one another. Law enforcement authorities do not determine whether a violation of this Policy has occurred, and the criminal justice system uses different standards related to proof and evidence. The Gender-Based Misconduct Office may need to temporarily delay an investigation while law enforcement is gathering evidence, generally no longer than 10 days, except when law enforcement specifically requests and justifies a longer delay. The Office will resume the investigation after learning that law enforcement no longer requires a delay or has completed the evidence-gathering stage of their investigation. The Office will not wait for the conclusion of any related criminal proceeding to begin its process.

The University does not require a Complainant to report gender-based misconduct to law enforcement; however, the University Resources listed later in this document are available to assist a Complainant with contacting law enforcement. Any questions about criminal law violations should be addressed to law enforcement.

The University's Public Safety personnel, Columbia's Title IX Coordinator and members of the Gender-Based Misconduct Office are familiar with New York City and New York State law enforcement processes and can help to explain those processes to students.

Confidential support resources and other resources listed also can explain how to report sexual assault and other forms of gender-based misconduct to law enforcement.

Confidential support resources or University Public Safety personnel when requested can also accompany any student requesting support to the Police Department or District Attorney's Office. They cannot serve as a substitute for legal advice on these matters.

# IV.    PROCEDURES FOR RESPONDING TO STUDENT GENDER-BASED MISCONDUCT (PROCEDURES)

Here you can find information about the University's disciplinary process for addressing alleged violations of the Gender-Based Misconduct Policy.

This section first describes how to report an incident of gender-based misconduct; students' rights and responsibilities in the disciplinary process; and other important background information about privacy, advisors, and time frames. It then details the various resolutions available.

## A. Reporting Gender-Based Misconduct

The University encourages students to report gender-based misconduct as soon as possible to maximize the University's ability to respond promptly and effectively. Students may meet with the Office staff to learn more about the process before making a report or providing additional information about a previously filed report.

The University recognizes that students may be most comfortable disclosing gender-based misconduct to a University employee they know well, such as a faculty member, coach, or resident advisor. These individuals and other University personnel -- including officers of administration and research, library staff, staff who work directly with students including advising, residential program and student affairs staff, and teaching assistants and resident advisors -- are required to report the incident to the Office, either directly or through the appropriate Title IX Coordinator(s).

Before a student reveals information about an incident, these individuals (Responsible Employees) will try to ensure that the student understands their reporting obligations. If a student wishes to maintain confidentiality and has not disclosed information about an incident, these individuals will seek to direct the student to the University's confidential resources.

Confidential resources, such as counseling staff, Disability Services staff, and staff from Sexual Violence Response are not obligated to report disclosures of gender-based misconduct except for aggregate statistical data that does not include individuals' names or identifying information. They will not share identifying information with the Gender-Based Misconduct Office about a student or an incident without the student's permission, except under exigent circumstances as required by law.

### Requesting Confidentiality in Connection with a Report to the Gender-Based Misconduct Office

A student who reports gender-based misconduct to the Office can request that the Office not disclose his or her identity to anyone else, including the person who allegedly committed the misconduct. While such a request may limit the University's ability to address the reported misconduct, the Office, in consultation with the appropriate Title IX Coordinator(s), will consider the request and honor it whenever possible. Considerations that are taken into account include: the Complainant's articulated concerns; the best interests of the University community; fair treatment of all involved individuals, including the Respondent's right to have specific notice of the allegations if the University were to take action that affects the Respondent; and the University's obligations to provide a safe and non-discriminatory environment for all students. The Office will promptly notify the student whether the University will be able to honor their request for anonymity.

Regardless of whether the University is able to grant a request to keep the student's identity confidential, University personnel will not reveal information about reported gender-based misconduct except to those who need to know in order to carry out their duties and responsibilities. In all cases, the University will take appropriate steps designed to counteract the effects of the alleged gender-based misconduct, prevent its recurrence, provide support and make accommodations for the students involved. This may include academic,

residential, and work accommodations; increased monitoring, supervision or security at locations or in connection with activities where the alleged misconduct occurred; and training and educational materials for the campus community. If there is reason for concern about possible retaliation or harm, the University will take protective measures in consultation with the affected students.

## Other Information about Reporting

### Time for Reporting

There is no time limit for submitting a report of gender-based misconduct. However, the University's ability to investigate and respond effectively diminishes with the passage of time.

Additionally, the timing of a report to the Office may affect the University's ability to implement sanctions on a Respondent found responsible for a violation of Policy. For example, if a Respondent is not a student at the time the report is made, the University is limited in the disciplinary action it can take, such as initiating an investigation against the Respondent. It will still seek to meet its Title IX obligations by providing support for a Complainant and taking steps to end the prohibited conduct, prevent its recurrence, and address its effects.

### Reports from Others and Anonymous Reports

In cases where gender-based misconduct is reported to the Office by someone other than the student who was subjected to the alleged misconduct (for example, a faculty member, resident advisor, friend or roommate), the Office will promptly notify the student that a report has been received. This Policy and the Procedures will apply in the same manner as if the student had made the initial report. The Office will make every effort to meet with the student to discuss available options and on-campus and off-campus resources.

Reports from anonymous sources will be treated in a similar fashion. Due to the nature of anonymous complaints, action by the Office in response to an anonymous complaint may be more difficult and, at times, impossible.

### Related Alcohol and Drug Violations (Amnesty)

The health and safety of every student at the University is of utmost importance. The University recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that gender-based misconduct occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Because the University strongly encourages students to report gender-based misconduct (including but not limited to domestic violence, dating violence, stalking, and sexual assault) to University employees, the following Policy provision applies: A student (including a bystander), acting in good faith, who discloses any incident of gender-based misconduct to a University employee or law enforcement will not be subject to subsequent disciplinary action by the University for violations related to the possession and/or use of alcohol and/or drugs occurring at or near the time of the gender-based misconduct, whether use and/or possession is intentional or accidental. This does not apply to those who use alcohol or drugs as a weapon or to facilitate assault.

In an effort to encourage students to make honest disclosures during the course of the disciplinary process, statements related to the use of alcohol or drugs during the reported incident(s) will also fall under this amnesty Policy unless the alcohol or drugs were being used to facilitate gender-based misconduct.

### Unknown/Non-University Offenders

The University will, if possible, investigate reports of incidents affecting University students that involve persons who are not members of the University community or whose identity is not known and take appropriate actions to protect affected students and others in the University community. Without knowing the identity of a perpetrator, action by the University may be more difficult and, at times, impossible.

Regardless, the Office will assist students in identifying appropriate campus and other resources and assist them with reasonable accommodations.

<u>Public Awareness Events</u>

The University supports public awareness events such as "Take Back the Night," the Clothesline Project, candlelight vigils, protests, survivor speak outs, and other forums that help inform the need for campus-wide education and prevention efforts. In accordance with federal guidance and New York State law, the disclosure of incidents of gender-based misconduct at such events and forums is not considered a report to the University for the purposes of prompting an investigation of a particular incident.

## B. Rights and Responsibilities During the Disciplinary Process

The University disciplinary process provides accessible, prompt, and fair methods of addressing reports of student gender-based misconduct. Both the New York State Students' Bill of Rights (Appendix A) and the University's process give the Complainant and the Respondent the following rights, explained in the subsequent sections:

- To respect, dignity, and sensitivity;
- To appropriate support from the University;
- To privacy to the extent possible consistent with applicable law and University Policy;
- To information about the University's Gender-Based Misconduct Policy and Procedures for Students;
- To the presence of an advisor throughout the process;
- To participate or to decline to participate in the disciplinary process (however, a decision not to participate in the process either wholly or in part may not prevent the process from proceeding with the information available);
- To a prompt and thorough investigation of the allegations;

- To adequate time to review documents following the investigation;
- To adequate time to prepare for a hearing;
- To an opportunity to challenge Investigator(s) or Hearing/Appellate Panel member(s) for a possible conflict of interest;
- To refrain from making self-incriminating statements;
- To an appeal of the decision made by the Hearing Panel and of any sanctions imposed by the Sanctioning Officer;
- To notification, in writing, of the case resolution, including the outcome of any appeal;
- To report the incident to law enforcement at any time; and
- To understand that information collected in the process may be subpoenaed in criminal or civil proceedings

### Privacy

The University will only reveal information about any report of gender-based misconduct to those who need to know the information in order to carry out their duties and responsibilities or as otherwise provided by law. It will inform all University affiliates, including students, faculty and staff participating in a disciplinary process, that they are expected to maintain the privacy of the process.

Complainants and Respondents may seek the assistance of family members, friends, counselors, therapists, clergy, doctors, attorneys, or similar resources; they are not prevented from discussing the incident(s) that is/are the subject of the disciplinary process.

### Advisors

The Complainant and the Respondent, respectively, may be accompanied to any meeting or hearing by an advisor of their choice through the course of the disciplinary process. Witnesses or others involved in the Gender-Based Misconduct process are not permitted to bring another person to any meeting or hearing, absent an approved disability accommodation.

Advisors may support the student and provide advice during an investigation and throughout the process. Parties are expected to maintain the same, single advisor throughout the process but are not required to bring their advisor to all meetings. Retaining a single, consistent advisor enables the process to move forward in an efficient fashion. In the event that a student wants to change their advisor, they must provide written notice to their Case Manager.

During meetings and hearings, the advisor may talk quietly with the student or pass notes in a non-disruptive manner. The advisor may not intervene in meetings with the Investigative Team. While an advisor may address the Investigative Team during an investigative interview to seek clarity, these interactions should be limited. Furthermore, during a hearing, the advisor may not directly address the Hearing Panel, nor may they give evidence, directly question witnesses or make verbal objections. In addition, while advisors may provide guidance and assistance throughout the process, all written submissions must be authored by the student.

Gender-Based Misconduct Office staff and University administrators will communicate directly with the student. It is the student's responsibility to communicate with their advisor, including but not limited to information related to process updates.

Additionally, while efforts will be made to accommodate the schedules of students and advisors, the process will not be unduly delayed due to an advisor's unavailability.

Advisors will be expected to sign an agreement to abide by these guidelines. If an advisor fails to abide by such guidelines, he/she may be prohibited from attending ongoing or future meetings. The agreement will be provided to the student and their advisor when the student requests an advisor or notifies their Case Manager that they have an advisor.

A Complainant or Respondent may choose to have an attorney serve as his or her advisor while engaging with this Policy and these Procedures. University students may retain counsel independently or request that the University arrange for an attorney-advisor. If a student makes that request, the University will provide an attorney-advisor at no cost to the University student.[9] Once an attorney-advisor is assigned by the University, the student may not request a different attorney-advisor from the University, but may select another advisor; if that occurs, the attorney-advisor originally provided by the University will withdraw from that role. If a Complainant or Respondent requests a University-provided attorney-advisor, the Office will notify the other party and upon request arrange for an attorney-advisor.

### Declining to Participate

The Complainant and/or Respondent may decline to participate in the investigation, adjudication, and/or any step of this process and any subsequent appeal. However, the Gender-Based Misconduct Office will make multiple efforts to engage their participation and may continue the process without the Complainant's and/or Respondent's participation. Declining to participate in an investigation precludes a Complainant or Respondent from participating in the adjudication process, including the ability to submit new information to the Hearing Panel or Appellate Panel, absent extraordinary circumstances. The Complainant or Respondent may submit an impact statement at the sanctioning stage, if applicable, without regard to earlier participation in the process.

Choosing to participate in a limited fashion (i.e. providing a prepared written statement but declining to participate in an interview or answer questions) may similarly limit a student's ability to participate in the adjudication process and/or submit new information to a Hearing or Appellate Panel, if applicable.

---

[9] The University will arrange for an attorney-advisor for a student when an investigation will occur. For matters that begin with an alternate resolution, such as restorative justice or mediation, the student may bring their advisor of choice but a University-appointed attorney-advisor will not be provided.

Even if a party declines to participate, the Office will continue to update each party throughout the process, unless a party submits a written request to the Office to cease contact.

Recurring refusal or failure to respond to outreach by the Office will be interpreted as declining to participate and may preclude or limit participation in later stages of the process, as explained on the following pages. Silence or a decision not to participate will not be treated as a negative factor in the investigation, adjudication, or appeal.

### Withdrawal from the Disciplinary Process

A student involved in the disciplinary process may withdraw from participation at any time without penalty. However, the University may, consistent with other provisions of federal and/or New York State law, still have obligations to investigate and/or take action. In those instances when the Office, in consultation with the appropriate Title IX Coordinator(s), determines that the University must proceed with an investigation, the Office will notify the appropriate party that the University intends to initiate or continue an investigation, but that the involved student is not required to participate in the disciplinary process. Withdrawal from the University while disciplinary action is pending against the student will result in a transcript notation so indicating.

### Time Frames

The University makes every reasonable effort to ensure that complaints are resolved as expediently and efficiently as possible. Whenever possible, the investigation of complaints should be completed within approximately 60 days upon receipt of the initial report, not including the time for any appeal(s). Many complaints may require extensive investigation, and time frames will vary depending on the complexity of the investigation and the severity and extent of the alleged misconduct. Time frames may be extended for administrative resolution, mediation, restorative Justice, and/or good cause as necessary to ensure the integrity

and completeness of this process. The reasons for extension of the time frame also include, but are not limited to: compliance with a request by law enforcement; a limited accommodation of the availability of parties, their advisors, and witnesses; students on leave; exam periods, school breaks or vacations; and/or accounting for complexities of a specific investigation, including the number of witnesses and volume of information provided by the parties. The Office will give periodic status updates to the parties in writing.

### Conflicts of Interest

The University requires any participant in the disciplinary process to disclose to the Gender-Based Misconduct Office any potential or actual conflict of interest. If a Complainant or Respondent believes that any individual involved in the investigation, adjudication, or sanctioning process has a conflict of interest, he or she may make a request to the Office that the individual not participate. A conflict of interest would include, for example, situations where an individual is a party's family member, close friend, or advisor or has other similar relationships with a party.

A Complainant or Respondent who believes that an Investigator, Hearing Panelist, Sanctioning Officer, or Appellate Officer has a conflict of interest must submit this written request to the Office that the individual not participate in the process within 2 days after notification of the individuals involved in the investigation or panel. Any request should include a description of the conflict. The fact that an individual is the same gender, race, etc., of a party or individual involved in the process is not a conflict and requests for changes in staffing on this basis will not be considered. If the Office determines that a conflict of interest exists, the University will take steps to address the conflict in order to ensure an impartial process.

## C. When a Report is Made: Intake; Accommodations and Interim Measures; Initial Assessment; and Resolution Options

The Gender-Based Misconduct Office is charged with addressing reports of violations of the Gender-Based Misconduct Policy for Students. The following section details the Office's initial response to and assessment of reports, and available options for resolution, including the investigation and hearing process.

### Intake with Case Managers

Case Managers within the Gender-Based Misconduct Office support both students who file a complaint and those responding to an accusation of a Policy violation. Case Managers help Complainants and Respondents to understand their rights and the disciplinary process within the Policy. Case Managers are also available to receive reports of concern and determine an appropriate response to assist the student.

Case Managers may help to facilitate the following:

- Academic support, including notifying academic advisors regarding missed classes, dropping classes, withdrawal, exam extensions etc.;

- Referrals to supportive and confidential resources on campus, such as counseling and Sexual Violence Response;

- Emergency housing and/or exploring housing options;

- Referrals to Attorney-Advisors;

- Identification of supportive services on and off campus to meet students' needs; and

- Support for navigation of the Gender-Based Misconduct process from filing and receiving notice of a complaint through resolution

In some instances, Case Managers may provide limited support to Complainants who may not be currently enrolled at or affiliated with the University to help facilitate appropriate accommodations through off-campus community resources.

Parity in the disciplinary process is of paramount importance. In all areas noted above, Case Managers assist parties in navigating the conduct process at Columbia; from the initial intake meeting in response to an allegation through the hearing process and beyond. Complainants and Respondents in the same case are supported by different Case Managers. Parties have access to confidential resources, such as Counseling and Psychological Services and the Ombuds Office.

### Accommodations and Interim Measures

The University can provide accommodations and impose interim measures after a report has been filed.

<u>Accommodations</u>

The Office will work with all students to ensure their safety and promote their well-being throughout their time at the University, including appropriate accommodations and support.

Students may request accommodations even in cases where an investigation is not undertaken or either party has declined to participate in the University disciplinary process.

The Office evaluates requests for accommodations in light of the circumstances and information available at the time of the request. In some instances, additional information may be required to sufficiently evaluate the need or provide for a requested accommodation. If requested accommodations cannot be granted, the Office will provide an explanation, in writing, to the student.

Accommodations may include, but are not limited to:

- Relocation of a student's residence;
- Adjusting a student's work schedule for University employment;
- Changing a student's academic schedule;
- Allowing a student to withdraw from or retake a class without penalty; and/or

- Providing access to tutoring or other academic support

In consultation with the appropriate Title IX Coordinator(s), the Office will work with students to obtain additional accommodations as necessary. The Office will also work with Disability Services to assist students, as appropriate, if the student so requests. The University will provide notice about accommodations only to those who need to know in order to make them effective.

Students who are Complainants or Respondents may request a prompt and reasonable review of the need for and terms of any accommodation that directly affects them and may submit information in support of their request. Requests for review of the accommodations shall be submitted in writing to the Associate Vice President for Student Conduct and Community Standards, and will be reviewed within 3 days upon receipt of the request for review.

A student who has experienced gender-based misconduct may also be entitled to remedies under applicable law, such as an order of protection. The University can assist students in contacting law enforcement or legal service organizations to learn about these remedies.

Interim Measures

The University may also take interim measures to ensure the safety of all parties involved and to protect the integrity of the ongoing disciplinary process while the disciplinary process is pending.

Interim measures include, but are not limited to:

- No-contact directives;
- Restricting a Respondent's access to campus buildings and/or University property;
- Moving a student's residence;

- Temporarily suspending a Respondent from the University;[10] and/or
- Temporarily suspending a Respondent from specified activities and/or positions of leadership

The University will provide notice about these measures only to those who need to know in order to make them effective.

Failure to comply with interim measures or other directives is a violation of University Policy and may lead to additional disciplinary action.

Following the report of a potential Policy violation, the Office will provide written notice to the students involved in the conduct, describing any necessary interim measures and providing information about the accommodations and resources available to them.

Students who are Complainants or Respondents may request a prompt and reasonable review of the need for and terms of any interim measure that directly affects them and may submit evidence in support of their request. Requests for review of the interim measure shall be submitted in writing to the Associate Vice President for Student Conduct and Community Standards, and will be reviewed within 3 days upon receipt of the request for review. Any interim measure(s) implemented will be periodically reviewed and may be revised as appropriate by the Office.

Initial Assessment of Reports

After receiving a report of gender-based misconduct, the Office conducts an initial assessment to evaluate whether, if substantiated, the conduct constitutes a Policy violation and whether there is a reasonable basis to engage the disciplinary process. Reasonable basis is defined as the existence of some credible information to support each element of the violation. Sources of credible information can include a credible witness or

---

[10] Interim suspensions will be reasonable and tailored to balance the ability of the Respondent to complete their studies with the safety of both the Complainant and the University community at large.

Complainant's statement, among others. The Office will assess the available information, determine if a report is supported or unsupported by any such information, and take the following actions:

- The Office may dismiss the report if it determines that the report does not allege facts that, if substantiated, would constitute a violation of the Policy or are implausible;

- The Office may refer the report to another office for review or address the conduct through alternate means, if the Office determines that the report is outside the scope of the Gender-Based Misconduct Policy; or

- The Office will review available options for resolution with the Complainant and Respondent, including but not limited to an investigation, before determining appropriate interim measures, facilitating accommodations, and initiating an appropriate resolution, if the Office determines that the report would, if substantiated, constitute a violation of the Policy. As discussed in more detail below, available resolutions include: administrative resolution; mediation; restorative justice; or investigation and Hearing Panel.

### Available Options for Resolution

During their initial meeting with a Case Manager and/or Investigator, and again at the conclusion of the initial assessment, relevant options for resolution will be discussed with each party. Possible resolutions include: administrative resolution; mediation; restorative justice; or investigation and hearing panel. At any time after a report is filed and before a hearing is scheduled, either party may request any one of these forms of resolution; however, *federal guidance requires that allegations of sexual assault can only be resolved by investigation and Hearing Panel.*

The Office will review a requested resolution in light of its initial assessment of the available information, and will determine if such a resolution is appropriate. The Office can require an investigation and hearing panel even if the parties request an alternate resolution.

Three of the four types of resolution (administrative resolution, mediation, and restorative justice) do not involve potential disciplinary or punitive action. These options are available when the parties do not wish to proceed with an investigation and/or hearing panel, and instead seek the Office's assistance to resolve allegations of gender-based misconduct, other than sexual assault, without taking disciplinary or punitive action.[11]

The decision to pursue these resolutions will be made after the Office conducts an initial assessment of a complaint or report, including an assessment of whether there is sufficient information to conduct an investigation and of the nature and scope of the alleged misconduct.

As discussed above, the Office also has the authority to take immediate and corrective action to address all alleged misconduct and any additional alleged Policy violation(s) that have occurred. The Office, in consultation with the appropriate Title IX Coordinator(s), may determine that additional action is appropriate without the participation of the parties, and may insist upon an investigation to ensure a safe campus environment.

Administrative Resolution

Administrative resolution can take place when a Complainant does not want to engage in other resolutions, or the Office does not have sufficient information to initiate an investigation. This form of resolution can include no-contact orders, implementation of safety measures, referrals to counseling, and targeted education and training.

Mediation

---

[11] Should statements made during administrative resolution, mediation, or restorative justice highlight aspects of the reported conduct not previously known to the Office, or detail additional violations of the Policy, the Office reserves the right to stop the resolution process and refer the matter to an investigation.

The purpose of mediation is to identify the implications of a student's actions and, with the assistance of a trained facilitator, to identify appropriate remedies to address them. Either party can request mediation to seek resolution; mediation will be used only with the consent of both parties, who will be asked not to contact one another during the process. Either party has the right to terminate the mediation process and resume another option for resolution at any time.

The mediation process will typically commence within 10 days after the Office receives consent to mediate from both parties, and will continue until concluded or terminated by either party or the Office. During mediation, any potential investigation and calculations for time frames will be stayed. If the mediation results in a resolution, the disciplinary process will be concluded and the matter will be closed. If a resolution cannot be reached, an investigation will commence.

During mediation, a facilitator will guide a discussion between the parties. In circumstances where the parties do not wish to meet face to face, either party can request "caucus" mediation, and the facilitator will conduct separate meetings. Whether or not the parties agree to meet face to face, each party will be permitted to bring an advisor of their choice to the meeting(s).

At the conclusion of the mediation, the facilitator will memorialize the agreement that was reached between the parties. The Office will monitor adherence to the proposed solution and close the matter when compliance is satisfactory.

The University will not use mediation for cases involving allegations of sexual assault.

<u>Restorative Justice</u>

A party may request to engage in restorative justice at any stage of the process. To engage in restorative justice, the parties should be comfortable being in the same room with each other and participating in a conversation guided by a specifically trained University administrator. The purpose of restorative justice is for all affected parties to identify the harms that were caused by a student's actions and to collaboratively determine the best method for repairing those harms. Restorative justice will be used only with the consent of both parties, either of whom has the right to terminate the process and resume an alternative resolution at any time.

The restorative justice process will typically commence within 10 days after the Gender-Based Misconduct Office receives written consent from both parties. It will continue until concluded or terminated by either party, or the Office. If the process leads to successful resolution, the disciplinary process will be concluded and the matter will be closed. If a resolution cannot be reached, an alternative disciplinary process will resume.

The Office will monitor the parties' adherence to the proposed solution and close the matter when compliance is satisfactory.

The University will not use restorative justice for cases involving allegations of sexual assault.

<u>Investigation and Hearing Panel</u>

The final option for resolution is an investigation and hearing panel. *This is the only available resolution for allegations of sexual assault.*

After the initial intake with a Case Manager, the University will notify the Complainant and the Respondent, in writing, that an investigation will proceed. This initial outreach will describe the allegations in the report, summarize the disciplinary process, and include a scheduled date and time for the Complainant and the Respondent to meet separately with the Gender-Based Misconduct Office. The Complainant and the Respondent must confirm receipt of the notice and meet with the Investigative Team within 1 week of receiving this notice. Requests to postpone meetings and interviews may be granted, provided that the request is based on a compelling reason. When possible, Complainants and Respondents should request a postponement no less than 24 hours before the scheduled meeting or interview.

## Requests Not to Investigate

The Complainant may request that an investigation not be undertaken. The Office, in consultation with the appropriate Title IX Coordinator(s), will consider such a request in light of the University's commitment to provide a safe and non-discriminatory environment for all students and weigh the following factors:

- Circumstances that suggest there is a risk of the Respondent committing additional acts of gender-based misconduct, such as: whether there have been other gender-based misconduct complaints and/or escalation of previously known conduct by the same Respondent; whether the Respondent has threatened further gender-based misconduct against the Complainant or others; and other circumstances that suggest there is an increased risk of similar future acts of gender-based misconduct by the Respondent;
- Whether the alleged gender-based misconduct was committed by multiple perpetrators;
- Whether there was use of a weapon or force in connection with the gender-based misconduct;
- Whether the University possesses other means to obtain relevant evidence, such as security cameras, witnesses and/or physical evidence;
- If the Complainant is under 17 years old

If the Office determines not to investigate, it will notify the Complainant in writing, including that the determination was made at the Complainant's request. At the Complainant's written request, the Office will also notify the Respondent, in writing, including that the Complainant asked the University not to investigate.

## Notices

The Office will provide notice in writing to both the Complainant and Respondent at many points in the process. Notice from the Office will be sent via University e-mail and may include information, such as: a written explanation of the allegation(s), Complainants' and Respondents' rights and options,

interim measures, available accommodations, initiation of an investigation, and the range of possible sanctions should the Respondent be found responsible for a Policy violation. The Office will also ensure that the Complainant and Respondent are updated throughout the investigative process, including with timely notice of meetings in which either or both the Complainant and the Respondent may participate, and/or if there are updates to the alleged violation(s) that will be investigated and/or adjudicated based on information learned during the investigation.

Prior to the initial interview with the Investigative Team, the Complainant and the Respondent will receive notice including a brief summary of the underlying facts of the reported incident. After the initial interview, the Investigative Team, in consultation with the appropriate Title IX Coordinator(s), will make an initial assessment of the information as detailed above. Should the investigation continue, the Complainant and the Respondent will receive notice detailing the allegation(s). At the conclusion of the investigation, and prior to any hearing, if applicable, the Complainant and the Respondent will receive notice of the charges detailing the specific Policy violation(s) to be considered by the Hearing Panel.

*Importantly, the initial allegations reported to the Office may not be the final charges submitted to the Hearing Panel for adjudication. The notice of final charges is dependent on the information gathered during the investigation. Whenever there are additional or modified allegations, notice will be provided to both parties.*

## Investigation Procedures

The Office will designate a two-person team ("the Investigative Team") to conduct an investigation into whether a violation of the Policy occurred. All Title IX Investigators will have extensive training in investigating and evaluating conduct prohibited under the Policy. The Investigative Team will be impartial and unbiased.

The parties will meet separately with the Investigative Team. The Investigative Team will discuss with each party the nature of the allegation(s), the rights and responsibilities of each party, the prohibition against retaliation, and the disciplinary process before discussing the specific facts of an allegation with each party. The Complainant, the Respondent, advisors, and all witnesses may not record any meeting or hearing conducted as part of the process, nor copy or photograph any documents or evidence to which they are afforded access as part of the process.

The Investigative Team will speak to each party in detail about the allegation(s) and ask each party to provide a list of witnesses and/or any relevant documents or evidence to be considered. The Investigative Team has the discretion to determine the relevance of any proffered witness and/or evidence and determine that certain witnesses and/or evidence should be included or excluded in the investigative process in light of the allegations and/or Policy set out here. A party is not required to provide any particular witness or evidence for an investigation to proceed, nor should a lack of such information dissuade any student from participating in the process.

Any documents submitted to the Investigative Team for consideration may become part of the Investigative Report in redacted form. During the investigation, the Investigative Team will adhere to the following protocols:

- <u>Statements</u>: All parties and witnesses are obligated to be honest and act in good faith. Any person who knowingly makes a false statement in

connection with the investigation may be subject to separate disciplinary action.

- <u>Evidence</u>: The Investigative Team will direct the Complainant, Respondent, witnesses, and other interested individuals to preserve any relevant evidence. Examples include, but are not limited to, electronic messages (e.g., e-mails, text messages social media and digital app messages, and other relevant writings and photographs). Any documents submitted to the Investigative Team for consideration may become part of the Investigative Report in redacted form. Intentional manipulation, editing, or other forms of fabricating evidence may result in disciplinary action. Certain forms of evidence will not be considered (e.g. polygraph examination results). Other unique pieces of evidence (e.g. sexual assault medical examination documentation) that a particular student wants to be considered will be reviewed by the Office in consultation with the appropriate Title IX Coordinator(s).

- <u>Witnesses</u>: The Complainant and the Respondent have the right to identify any individuals who may be witnesses to the conduct alleged. The parties should be aware it is possible for both the Respondent and the Complainant to list the same people as witnesses. Any attempt to threaten, intimidate or otherwise improperly influence the testimony of a witness may result in disciplinary action. The Investigative Team will attempt to contact and interview any witnesses it deems to have relevant information, including those identified by the parties. The Investigative Team will not interview witnesses whose sole purpose is to provide character information, or specialized expertise about a particular subject area.

- <u>Questions</u>: Throughout the investigation, and until the Pre-determination Conference, both the Complainant and the Respondent have the opportunity to submit questions to be asked of each other and any witnesses involved in the investigation. Questions will be reviewed by the

Investigative Team for their appropriateness and permissibility pursuant to the Policy.

- <u>Advisors</u>: During any meeting, interview or hearing, the Complainant and Respondent may bring an advisor. In order to avoid undue delay, if the Complainant, Respondent, or advisor is unable to be physically present for any stage of the investigative process, accommodations will be made for their participation by other means.

- <u>Sexual History</u>: Either the Complainant or the Respondent may provide information regarding their shared sexual history. Generally, the Investigative Team will not consider information concerning the Complainant's or the Respondent's sexual history with other people, except under very limited circumstances such as explaining an injury or responding to another specific question raised by an allegation. If either party offers any of the aforementioned information, the other will be notified and have the right to respond and request this information not be considered. The Investigative Team will determine whether information should be included based on relevance to the investigation, applicable law, and fairness to both parties.

- <u>Mental Health Treatment/Diagnosis</u>: Each party has the right to request that evidence regarding his or her mental health diagnosis and/or treatment be excluded from consideration when responsibility is being determined. However, if an individual wishes to present evidence of their *own* mental health diagnosis and treatment he/she may do so in limited circumstances. If either party offers this type of information for consideration, the other party will be notified and can request that the information not be considered.

- <u>Prior Conduct Violations</u>: Prior reports or determinations of responsibility for gender-based misconduct will not be considered in determinations of responsibility (see the following pages) and will therefore not be addressed in an Investigative Report. The University is committed

to ensuring each party a meaningful opportunity to be heard in any given case; for this to occur the investigation and adjudication of one complaint must be based on facts relevant to that complaint and may not be influenced by reports or determinations from another, separate complaint. However, prior determinations of responsibility for allegations of the same type of gender-based misconduct may be admissible in the sanctioning stage of the process.

- <u>Credibility Assessment</u>: The Investigative Team considers the following factors when assessing the credibility of parties and the witnesses: consistency or inconsistency of accounts of events over time; demeanor during interviews; motive to lie; any corroborating evidence; and reasonable and logical statements and details.

- <u>Burden of Proof</u>: The Investigative Team applies "preponderance of the evidence" as the standard of proof to determine whether a violation of the Policy occurred. Preponderance of the evidence means that the Investigative Team must determine, based on the evidence presented, whether the Respondent was more likely than not to have engaged in the conduct at issue. During the investigation and adjudication process, the Respondent is presumed not responsible. The Complainant and Respondent may each participate at the level to which they are comfortable. The Investigative Team bears the burden of showing evidence to support its recommendation regarding responsibility. The burden is not on the Respondent to prove that they did not engage in gender-based misconduct.

- <u>Prohibition on Recording</u>: Recording any part of the disciplinary process or unauthorized copying of any documents in the disciplinary process by any means is prohibited. Copying includes but is not limited to: audio or video recording, streaming, photographing, scanning, transcribing, or any other form that conflicts with the spirit of this directive. Allegations of non-compliance will be

reviewed through the Dean's Discipline process and may result in disciplinary action.

The University's process for responding to, investigating and adjudicating gender-based misconduct reports will ordinarily continue during any law enforcement investigation or proceeding. The Gender-Based Misconduct Office may need to temporarily delay an investigation while law enforcement is gathering evidence, generally no longer than 10 days, except when law enforcement specifically requests and justifies a longer delay. The Office will resume the investigation after learning that law enforcement no longer requires a delay or has completed the evidence-gathering stage of their investigation. The Office will not wait for the conclusion of any related criminal proceeding. It should be noted that the standards of criminal law are different than those employed by the University; while information collected by law enforcement may be included in the Office investigation, determinations in criminal investigations and proceedings will not be considered in the Office's investigation and adjudication.

At the conclusion of the initial phase of the investigation, the Investigative Team will provide to the Complainant and the Respondent, in writing, a Notice of Final Charges, which will include a description of the alleged Policy violation(s) that will be considered during the hearing process, if applicable.

The Investigative Team will then prepare a report based on interview summaries, witness statements and other documents gathered during the investigation. In accordance with the Family Educational Rights and Privacy Act ("FERPA"), the Investigative Team will redact names and other identifying information of other students from the report and related materials, except to the extent that doing so would interfere with the purpose of Title IX to eliminate sex-based discrimination. The Office will provide a redacted and watermarked copy of the report to the Complainant, Respondent, and/or their respective advisors for their review, to be returned to the Office at the completion of the disciplinary process. Media exhibits such as video recordings and photographs of individuals will be available for individual review in the Office, at a prearranged time.

### Pre-Determination Conference

After the parties have had the opportunity to review the factual summary of the Investigative Report, a Pre-Determination Conference will be scheduled. During the conference, the Investigative Team will review available resolutions, if applicable, with each of the parties (see Available Options for resolution above). If the parties do not wish to engage in any of the available alternative resolutions to a post-investigation Hearing Panel, each party will be asked if they would like to provide additional information or clarification to the student's portion of the factual summary.

The Pre-Determination Conference is each party's opportunity to provide correction to typos in the factual summary, including correction of names and/or dates, or other minor factual errors. They also can argue that the factual summary is inaccurate; identify additional witnesses to be interviewed; and ensure that all relevant information is included. The Pre-Determination Conference is the **final** opportunity for the Complainant and Respondent to offer evidence or information to be included as an exhibit in the Investigative Report. The Investigative Team will review all requests and make the appropriate changes to the factual summary, which may be reviewed by each party.

While the parties may suggest questions during any stage of the investigative process, at this point, the Pre-determination Conference will be each party's **final** opportunity to provide questions for the Investigative Team to ask of any other individual involved, including witnesses. The Complainant and Respondent will be required to submit a written list of all proposed questions to the Investigative Team no later than 1 day before the scheduled Pre-Determination Conference, so the questions can be considered and discussed during

the Conference. Questions should be related to the factual summary and should not be duplicative or seek a restatement of a fact that has already been included in the factual summary. The Investigative Team will inform each party if any of the questions they proffered are outside the scope of the Policy or are unrelated to the case and, as such, may be denied. Questions may be modified for appropriateness or clarity by the Investigative Team prior to being asked of the other individual. Following the conference, the Investigative Team will pose additional questions and document responses as appropriate.

The Investigative Team does not issue a recommended finding(s) regarding the alleged violation(s) of Policy during the Pre-Determination Conference.

After the Pre-Determination Conferences and additional review conclude, the investigation is considered closed. Options for resolution, if applicable, will again be reviewed with both parties.

### Hearing and Adjudication Process

The process described here will be used in all matters involving allegations of sexual assault and in all other matters where the parties do not achieve a resolution through another available process.

Pre-Hearing Conference, Disciplinary Action Agreement, and Finalization of Investigation

After the investigation is completed, the Investigative Team schedules a Pre-Hearing Conference with each party. During the Pre-Hearing Conference, the Investigative Team will discuss the analysis and recommendation of responsibility for each alleged charge, and provide a copy of this section of the Investigative Report to each party, which contains a credibility assessment and analysis of the charges.

At the Pre-Hearing Conference, the Investigative Team will ask each party to complete a Disciplinary Action Agreement. The Disciplinary Action Agreement asks whether the party would like the matter referred to a Hearing Panel for adjudication (i.e. a formal decision

about whether the alleged charge(s) occurred). In addition, the Disciplinary Action Agreement asks the Respondent to respond in writing to the alleged charge(s) in one of the following ways: Responsible; Not Responsible; No Contest; or No Response. Each party must submit their respective Disciplinary Action Agreement to the Office in writing within 3 days of receipt. Each party will be notified of the other party's response.

Should neither party request a hearing within 3 days, the Investigative Team's recommended finding(s) will stand, with each party retaining their right to appeal the sanction if applicable (see Appeal Process below).

If the Respondent accepts responsibility or responds "No Contest" on the Disciplinary Action Agreement, or the Investigative Team recommends a finding of responsibility and neither party requests a hearing, the matter will be referred directly to the Sanctioning Officer (see section, "Sanctions and Other Remedies"). A hearing will not be conducted and neither party can appeal the finding(s) of responsibility for Policy violations. Both parties retain the right to appeal the sanction issued by the Sanctioning Officer (see "Appeal Process").

If either party requests a hearing, the matter will proceed to a Hearing Panel for adjudication.

Hearing Panel

The Hearing Panel is tasked with evaluating and analyzing all relevant information in the Investigative Report, including the credibility assessment and recommendation of responsibility provided by the Investigative Team, as well as any relevant additional submissions and information presented by the parties in the hearing process (see Preparing for the Hearing below). The panel determines whether a violation of Policy occurred based on the preponderance of evidence standard.

If the Hearing Panel reviews the Investigative Report and determines that additional investigation needs to be conducted, it may request that the Investigative

Team conduct additional interviews or address any concerns. Any additional information collected by the Investigative Team at this stage will be provided to the Hearing Panel, the Complainant, and the Respondent in the form of a post-investigation addendum to the Investigative Report.

The Hearing Panel will generally have three members drawn from specially trained administrators within the University's Student Conduct and Community Standards office and/or the Equal Opportunity and Affirmative Action office, excluding the Investigative Team and other administrators responsible for the report. All panelists receive relevant training at least once a year. In addition to training on how the adjudicatory process works, the training will include specific instruction on how to evaluate evidence impartially and how to approach students about sensitive issues that may arise in the context of alleged gender-based misconduct.

The Complainant and Respondent will be informed of the panel's membership before the hearing process begins and afforded an opportunity to raise any perceived conflicts of interest before the hearing (see Conflict of Interest above).

<u>Preparing for the Hearing</u>

In preparation for the hearing, the Complainant and the Respondent should review the Investigative Report and any supplemental materials. The parties may prepare a written statement in response to the Investigative Report addressing their agreement or disagreement with the recommendation(s).

The written statement must be prepared by the student and be no more than 10 single-spaced typed pages, using size 12-point Times New Roman font and 1-inch margins. The written statement must be submitted to the Office no fewer than 2 days prior to the scheduled hearing. References to evidence should be made to materials already included in the Investigative Report; no attachments or additional exhibits will be accepted. Statements discussing the impact of the alleged gender-

based misconduct or the disciplinary process are provided directly to the Sanctioning Officer; they are not considered for the purpose of determining responsibility. Statements submitted for consideration that include information outside the scope of review by the Hearing Panel will be redacted.

<u>Hearing Procedures</u>

The Office, whenever possible, will give the Complainant and the Respondent at least 5 days advance notice of the hearing. The hearing is a closed proceeding; no one other than the Hearing Panel members, the Respondent, the Complainant, their respective advisors, the Investigative Team, and necessary University personnel may be present in the hearing room or rooms during the proceeding. If a party is unable to appear at the Office for the hearing, accommodations may be made for the party's appearance by other means. Requests to postpone the hearing may be granted at the discretion of the Office based on a compelling reason. Where possible, parties should make a postponement request no less than 24 hours prior to the time of the hearing.

The Complainant, the Respondent, and the Investigative Team are afforded the opportunity to participate in the hearing. Witnesses are not involved in the hearing process. Each party and the Investigative Team will be placed in a separate room for the duration of the hearing and may view the proceedings via video conference. When it is their turn to appear before the Hearing Panel, the Complainant, the Respondent, and/or the Investigative Team will appear separately before the panel. Each party's respective advisor can also be present in the room when the advisor's party is present. During the hearing, the Hearing Panel may pose questions to a party and/or the Investigative Team, to better clarify or understand and analyze the Investigative Report. The Complainant and Respondent will not be permitted to submit additional questions at the hearing. Additionally, in the event a student submits a statement containing inaccurate facts or information outside the scope of the Policy, those

portions of the information may be redacted and/or a curative instruction may be given to the Hearing Panel. In general, hearings will proceed as follows:

- Complainant's opening statement (up to and no more than 7 minutes)
- Respondent's opening statement (up to and no more than 7 minutes)
- Questions by the Panel to the Complainant *(if the Panel deems necessary)*
- Questions by the Panel to the Respondent *(if the Panel deems necessary)*
- Questions by the Panel to the Investigative Team *(if the Panel deems necessary)*
- Complainant's closing statement (up to and no more than 7 minutes)
- Respondent's closing statement (up to and no more than 7 minutes)

In cases where either the Complainant or Respondent opts not to participate in the hearing, the other party can request that a hearing not be held and the Hearing Panel may render a decision based on the Investigative Report, post-investigation addendum (if applicable), and any written submissions from the Complainant and/or Respondent.

Additional hearing rules include:

- <u>Statement via Video Conference</u>: Only the person giving a statement (and that person's advisor, if applicable) is in the hearing room with the panelists and necessary administrator(s) during their statement. The Complainant, the Respondent, and the Investigative Team will each have the opportunity to view and listen to statements from a separate, private room via video conference.
- <u>Questioning</u>: Only the Hearing Panel may ask questions of the Complainant, Respondent, and/or Investigative Team. Questions will focus on statements made by the parties and the analysis of the information provided by the parties and the Investigative Team, including the Investigative Team's recommendation. The Complainant and

the Respondent will not be permitted to ask or submit questions at the hearing.

- <u>Information Regarding Sexual History</u>: The same standards that apply to considerations of sexual history by the Investigative Team also apply to the Hearing Panel. In addition, only information included in the Investigative Report will be considered by the Hearing Panel and may be discussed at the hearing.
- <u>Prior Conduct Violations</u>: In cases involving allegations of gender-based misconduct, prior findings of responsibility for allegations of the same will not be considered by the Hearing Panel. However, these prior findings may be admissible in the disciplinary stage that determines the appropriate sanction for a particular violation of Policy.
- <u>Cell Phones and Recording Devices</u>: Cell phones and recording devices may not be used in the hearing room(s) unless approved by the panel in advance.

<u>Determining Responsibility</u>

Following the investigation and conclusion of the hearing, the Hearing Panel will render a determination of whether the Respondent is responsible for the violation(s). The Hearing Panel will use "preponderance of the evidence" as the standard of proof to determine whether a violation of the Policy occurred. Preponderance of the evidence means that a Hearing Panel must determine whether, based on the evidence presented, the Respondent was more likely than not to have engaged in the conduct at issue.

The Hearing Panel will find a student responsible or not responsible, based on a majority vote, after a review of all of the statements and evidence summarized in the Investigative Report, the written statements submitted by the Complainant and the Respondent, and the statements, testimony, and evidence at the hearing. The Hearing Panel will generally render a decision within 3 days after the conclusion of a hearing and will include an explanation of the basis for the decision.

If the Hearing Panel finds the Respondent responsible, the matter will proceed to the sanctioning stage. The Office will transmit the Hearing Panel's determination to the Sanctioning Officer (described on the following pages) of the Respondent's school, and to the Respondent and the Complainant.

Regardless of the Hearing Panel's determination, each party will have the opportunity to appeal any decision and/or sanction, if applicable.

## D. Sanctions and Other Remedies

### How Sanctions are Determined

In determining a sanction, the Sanctioning Officer of the Respondent's school, after consultation with the Student Conduct and Community Standards Office, will impose sanctions that are:

- Fair and appropriate, given the facts of the particular case;
- Consistent with the University's handling of similar cases;
- Adequate to protect the safety of the campus community; and
- Reflective of the seriousness of gender-based misconduct

When a student is found responsible for a Policy violation, relevant factors will be considered when imposing a sanction, including but not limited to, if applicable: the specific gender-based misconduct at issue (such as penetration, touching under clothing, touching over clothing, unauthorized recording, etc.); the circumstances accompanying the lack of consent (such as force, threat, coercion, incapacitation, etc.); the Respondent's state of mind (intentional, knowing, bias-motivated, reckless, negligent, etc.); sanctions imposed in other matters involving similar conduct; the impact of the offense on the Complainant; the Respondent's prior disciplinary history; and the safety of the University community.

In addition, prior to the conclusion of the hearing and imposition of a sanction, both the Complainant and

the Respondent may provide a written impact statement discussing how the alleged gender-based misconduct has impacted them. The written statement must be prepared by the student and be no more than 5 single-spaced typed pages, using size 12-point Times New Roman font and 1-inch margins. The statement will only be considered by a Sanctioning Officer if there is a finding of responsibility or if the Respondent has accepted responsibility or responded "No Contest" to the alleged violation(s) in the Disciplinary Action Agreement.

The Sanctioning Officer from the Respondent's school, in consultation with the Student Conduct and Community Standards Office, will render a sanctioning decision within 3 days following the receipt of the Hearing Panel's determination. The sanctioning decision will be communicated in writing to the Complainant and the Respondent, with a rationale for the sanction.

There will be no sanction notice if there is not a responsible finding.

### List of Sanctions

The University may impose one or more of the following sanctions on a student determined to have violated the Policy:

- Reprimand/Disciplinary Warning;
- No-Contact Directive requiring the Respondent to have no contact with the Complainant;
- Change to the Respondent's academic schedule;
- Disciplinary Probation;
- Revocation of honors or awards;
- Restricting access to University facilities or activities (student activities and campus organizations and buildings);
- Removal from and/or restricted participation in academic or extracurricular activities and/or University organizations, or restriction from University services;
- Change to the Respondent's residence;

- Dismissal or restriction from University employment;
- Removal from student housing;
- Admission revocation (for example, in the case of an undergraduate student admitted to a University graduate or professional program);
- Disciplinary Suspension;
- Expulsion;
- Withholding or deferral of issuance of degree;
- Revocation of degree; and/or
- Revocation of alumni privileges (if the Respondent graduates prior to the conclusion of the disciplinary process)

If a sanction of disciplinary probation, disciplinary suspension, expulsion, withholding of degree, or revocation of degree is issued, the student will be considered not in good disciplinary standing.

In addition to any other sanction (except where the sanction is withholding of degree, expulsion, or revocation of degree after a student has graduated), the University will require any student determined to be responsible for a violation of the Policy to receive appropriate education and/or training related to the gender-based misconduct at issue. The University may also recommend counseling or other support services for the student.

When a student is found responsible and the sanction includes suspension or expulsion, the student may be removed from a campus residence and either severely restricted in their movements on campus or barred completely during the entirety of the appeal-filing period and appeal process. If a Respondent is eligible for return to campus while a Complainant remains on campus, the Complainant will, at the earliest possible date, be notified in writing of the Respondent's intention to return.

In addition, while an investigation, a determination and/or appeal is pending, an administrative hold may be placed on the Respondent's University transcript, diploma, registration, and/or student account until the process is resolved. Upon conclusion of the appeal

process, a transcript notation will be indicated on the Respondent's record for cases resulting in suspension, expulsion or in cases where the Respondent withdraws from the University during the investigation or the hearing process. Notations on transcripts will be indicated as follows: disciplinary suspension; disciplinary expulsion; or withdrawn with disciplinary action pending. For more information on transcript notations please visit: http://www.essential-policies.columbia.edu/university-regulations-including-rules-conduct#standard or http://www.tc.columbia.edu/policylibrary/associate-provost-enrollment-services/transcript-notations/ for Teachers College.

## Ongoing Accommodations for Complainants

Whatever the outcome of the investigation, hearing or appeal, a Complainant may request ongoing or additional accommodations, and the Office, in consultation with the designated administrator of the Complainant's school, will determine whether such measures are appropriate. These accommodations and additional responses may also be available for Complainants who choose not to file a complaint or participate in an investigation, hearing or appeal. Potential accommodations include:

- Providing an escort for the Complainant;
- Moving the Complainant's residence;
- Changing the Complainant's academic schedule;
- Adjusting the Complainant's work schedule;
- Allowing the Complainant to withdraw from or retake a class without penalty; and
- Providing access to tutoring or other academic support, such as extra time to complete or re-take a class

## Additional Responses

The University may also determine that additional measures are appropriate to respond to the effects of an incident on the University community. Additional responses for the benefit of the University community may include:

- Increased monitoring, supervision, or security at locations or activities where the misconduct occurred;
- Additional training and educational materials for students and employees;
- Revision of the University's policies on gender-based misconduct; and/or
- Climate surveys regarding gender-based misconduct

## E. Appeal Process

Respondents and Complainants may appeal the Hearing Panel decision and/or the sanction(s) within 7 days after receipt of the finding and sanctioning notice (if applicable), respectively, by filing an appeal in writing to the Gender-Based Misconduct Office.

Appeals are decided by an Appellate Panel majority vote. The Appellate Panel consists of three Deans of schools: the Dean of the Respondent's school, the Dean of the Complainant's school, and a Dean from another school. Should the Complainant and the Respondent attend the same school, two deans will be added from other schools. Should a party be a student of a graduate or professional school, Deans from graduate or professional schools will comprise the panel. Should one party be an undergraduate student and another party a graduate student, the Appellate Panel will consist of the Dean of the Respondent's school, the Dean of the Complainant's school, and a Dean of School from the academic level of the Respondent. All Deans will receive relevant training at least once a year on how the adjudicatory and appeal process works, the elements essential to a fair and balanced review, and the sensitive issues in reviewing gender-based misconduct cases.

The three grounds for appeal are:

- <u>Procedural error</u>: An appeal based on procedural error must identify with specificity each alleged error within the investigative and/or hearing process and the ways in which the specified error(s) substantially affected the decision of the Hearing

Panel and/or Sanctioning Officer to the detriment of the appealing party. Disagreement with the finding or sanction is not, by itself, a ground for appeal;

- <u>New information</u>: An appeal based on new information must explain why this information was not available or not provided to the Investigative Team in a timely manner, and how this information would have substantially altered the decision by the Hearing Panel. If a party declined to participate or withdrew from the process, the panel will not consider information that the party could have provided if they had fully participated in the process. This includes situations where a student declines to participate on the advice of their advisor; and/or
- <u>Excessiveness or insufficiency of the sanction</u>: An appeal based on the imposed sanction must explain why the sanction is inappropriate based on the weight of the information provided during the investigation, hearing and/or sanction.

Attached to their appeal, the student may provide a written submission for the Appellate Panel to review. The written statement must be prepared by the student and be no longer than 5 single-spaced typed pages, using 12-point Times New Roman font and 1-inch margins. No attachments or exhibits will be accepted; references to evidence should be made to materials included in the Investigative Report.

If either the Complainant or the Respondent submits an appeal, the Office will notify the other party within 3 days after receipt. The Office will provide the non-appealing party an opportunity to review the submission and submit a written response. This response must be written by the student, no more than 5 single-spaced typed pages, using 12-point Times New Roman font and 1-inch margins, and submitted within 5 days after a notice of appeal is issued. If both the Complainant and the Respondent appeal, the appeals will be considered concurrently and both parties will

have the opportunity to review and respond to the other party's appeal.

The purpose of an appeal is not to initiate a review of substantive issues of fact, or for a new determination of whether a violation of the Policy has occurred. The Appellate Panel is strictly limited to determining if an appeal should be granted based on the above three grounds for appeal. In making a determination, the Appellate Panel will have access to and the ability to review all applicable documents, including the complete Investigative Report, all exhibits, written statements submitted to the Hearing Panel, impact statements, and a recording of the hearing (if applicable). The Appellate Panel may also request additional information from the Investigative Team and/or Hearing Panel regarding issues of procedural error or new evidence, and the Sanctioning Officer and/or Student Conduct and Community Standards regarding sanctioning precedent. Additionally, in the event a student submits an appeal containing inaccurate facts or information outside the scope of the Policy, those portions of the information may be redacted and/or the Title IX Coordinator may provide a curative instruction to the Appellate Panel. The Appellate Panel may take the following actions:

- Affirm the decision and/or sanction;
- Revise the sanction; or
- Reverse and send back the matter to the Hearing Panel or Investigative Team for further consideration.

If the matter is returned to the Hearing Panel or Investigative Team, the Appellate Panel will provide instructions regarding the nature and extent of the reconsideration. Following reconsideration by the Hearing Panel or Investigative Team, further proceedings will be conducted as appropriate.

The Appellate Panel will notify the Complainant and the Respondent of their decision in writing. Appeal decisions will be rendered within 15 days after the receipt of the last written appeal by either of the parties.

There is no further recourse beyond the decision of the Appellate Panel.

## F. University Records

### File Retention

The disciplinary file compiled as part of an investigation into allegations of gender-based misconduct is part of a student's educational record and is maintained by Student Conduct and Community Standards. This file generally contains a description of the alleged violation, supporting documentation, written submissions, the Investigative Report with exhibits, and official case-related correspondence. The University will maintain and report disciplinary files for a minimum of 7 years from the date of incident or for 4 years after a student's graduation or separation, whichever extends the longest. After the maximum file retention period, the files will no longer be reportable except in cases resulting in suspension or expulsion which are retained indefinitely.

### Records Disclosure

Disciplinary proceedings conducted by the University are subject to the Family Educational Records and Privacy Act ("FERPA"), a federal law governing the privacy of student information. FERPA generally limits disclosure of student information outside the University without the student's consent, but it does provide for release of student disciplinary information without a student's consent in certain circumstances. For example, it is important to note that the release of student disciplinary records is permitted without prior consent to: University officials with legitimate educational interest such as a student's academic advisor and to Columbia Athletics if the involved student is an athlete. The University will also release information when a student gives written permission for information to be shared.

Any information gathered in the course of an investigation may be subpoenaed by law enforcement authorities as part of a parallel or subsequent

investigation into the same conduct, or required to be produced through other compulsory legal processes.

Unless otherwise specified by the student, the University will respond to third-party requests for a student's disciplinary records (e.g. requests by graduate schools or employers) by disclosing only a record associated with an outcome where a student was deemed not in good disciplinary standing. This record includes the student's violation(s), the corresponding sanction(s), and the date of determination.

Students and alumni may inquire about their disciplinary record by visiting: http://studentconduct.columbia.edu/ or http://bitly.com/sccsbgcheck/.

Additional information about FERPA can be found at:

- Columbia University's Essential Policies for the Columbia Community;
- Barnard College's Policy and Guidelines Regarding Student Records Under the Family Educational Rights and Privacy Act of 1974 (FERPA); and
- Teachers College's Student Records and Family Education Rights and Privacy Act (FERPA) Statement

**Reporting of Crime and Disciplinary Statistics**

A federal law called the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act")[12] requires the University to record and report certain information about campus safety, including the number of incidents of certain crimes on or near campus, some of which constitute gender-based misconduct under this Policy. As described in the chart in the Resources listing at the back of the Policy, many employees who receive reports of gender-based misconduct are required by the Clery Act to notify University Public Safety about such incidents for statistical reporting purposes only; these notifications

may include the classification and location of the reported crime, but do not identify the students involved.

Additionally, as a matter of Policy unrelated to the Clery Act, the University annually reports aggregate information to the University community concerning reported incidents of gender-based misconduct and the results of student disciplinary proceedings. Such reports do not contain information identifying individual student participants.

## V.   AMENDMENTS

The University may amend the Policy or the Procedures periodically. Nothing in the Policy or Procedures shall affect the inherent authority of the University to take such actions as it deems appropriate to further the educational mission or to protect the safety and security of the University community.

## VI.   APPENDICES

A. New York State Students' Bill of Rights

B. Resource Guide for Students

---

[12] For purposes of the Clery Act, Columbia University, Barnard College, and Teachers College separately report Clery data.

# NYS STUDENTS'
# BILL OF RIGHTS

New York State law requires that all institutions of higher education in New York publish the following Bill of Rights for all students attending higher education institutions in the State.

**All students have the right to:**

1. Make a report to local law enforcement and/or state police

2. Have disclosures of domestic violence, dating violence, harassment, stalking, sexual exploitation, sexual assault, and retaliation treated seriously

3. Make a decision about whether or not to disclose a crime or violation and participate in the University gender-based misconduct process and/or criminal justice process free from pressure by the University

4. Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard

5. Be treated with dignity and to receive from the University courteous, fair, and respectful health care and counseling services, where available

6. Be free from any suggestion that the Complainant is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations

7. Describe the incident to as few University representatives as practicable and not be required to unnecessarily repeat a description of the incident

8. Be protected from retaliation by the University, any student, the accused and/or the Respondent, and/or their friends, family, and acquaintances within the jurisdiction of the University

9. Access to at least one level of appeal of a determination

10. Be accompanied by an advisor of choice who may assist and advise a Complainant, accused, or Respondent through the judicial or conduct process included during all meetings and hearings related to such process

11. Exercise civil rights and practice of religion without interference by the investigative, criminal justice or judicial or conduct process of the University

# STUDENT CONDUCT AND COMMUNITY STANDARDS
## GENDER-BASED MISCONDUCT RESOURCES FOR STUDENTS

## ON-CAMPUS RESOURCES

The University Health Services Student Fee covers the on-campus resources that are available to students enrolled in their school's health service program. Services are available during normal business hours, 9:00 a.m.-5:00 p.m., unless otherwise noted.

### CONFIDENTIAL

**Sexual Violence Response & Rape Crisis/Anti-Violence Support Center***
- ✱**Morningside:** Alfred Lerner Hall, Suite 700
- **CUMC:** 60 Haven Ave, Bard Hall, Suite 206
- **Barnard:** 105 Hewitt Hall | *(Available during the academic year)*
- ✱**Helpline:** 212-854-HELP (4357) *(Available 24 hours a day year-round)*

**Ombuds Office**
- **Morningside:** 660 Schermerhorn Ext. | 212-854-1234
- **CUMC:** 154 Haven Ave, Room 412 | 212 -304-7026
- ✱**Teachers College:** Horace Mann 325 | 212-678-4016

**Medical Services**
- ✱**Morningside:** John Jay | 212-854-7426 | Mon–Thur 9am-4:30pm | Fri 8am – 3:30pm
- **CUMC:** 60 Haven Ave, Suite B234 | 212-305-3400
- **Barnard:** Lower Level Brooks Hall | 212-854-2091

The medical treatment resources listed above can provide treatment for injuries and for potential exposure to sexually transmitted diseases. They also provide emergency contraception and other health services. They can assist in preserving evidence or documenting any injuries, including by helping find a Sexual Assault Nurse Examiner, who is specially trained to collect evidence. Taking these steps promptly after an incident can be very helpful in later criminal proceedings and/or in seeking a protective order.

**University Counseling and Psychological Services**
- ✱**Morningside:** Alfred Lerner Hall, Suite 800 | 212-854-2878
- **CUMC:** 60 Haven Ave, Bard Hall | 212-305-3400 *by appointment only*
- **Barnard:** 100 Hewitt Hall, 1st Floor | 212-854-2092 After hours 855-622-1903

**University Pastoral Counseling**
- **Office of the University Chaplain:** *(Ordained Clergy)* Earl Hall Center | 212-854-1493

**Columbia Office of Disability Services** *(Confidential Resource for Columbia Only)*
- **Morningside:** Wien Hall, Suite 108A | 212- 854-2388
- **CUMC:** 105 Bard Hall, 50 Haven Ave | 212-304-7029 http://www.health.columbia.edu/disability-services

✱ indicates that facility supports Teachers College.

## ADDITIONAL RESOURCES (NON CONFIDENTIAL)

**Gender-Based Misconduct Office** within the Student Conduct and Community Standards Office ("the Office")
- Case Management and Community Engagement conductcm@columbia.edu | 212-854-1717

**Equal Opportunity and Affirmative Action (EOAA)**
- eoaa@columbia.edu | 212-854-5511

**University Title IX Coordinators**
- **Columbia University:** Marjory Fisher, Associate Vice President | 208 Philosophy Hall | mdf2166@columbia.edu 212-854-1276
  **Barnard:** Molree Williams-Lendor, Executive Director for Equity | 102 Milbank Hall | mwilliam@barnard.edu | 212-854-0037
- **Teachers College:** Janice Robinson, Vice President for Diversity and Community Affairs | Zankel 128 jsr167@tc.columbia.edu | 212-678-3732

**University Public Safety**
- **Morningside:** 212-854-5555
- **CUMC:** 212-305-7979
- **Barnard:** 212-854-6666
- **Teachers College:** 212-678-3333

**International Students and Scholars Office (ISSO)**
- 524 Riverside Drive, 1st Floor https://isso.columbia.edu/ | 212-854-3587

**Requesting Accommodations for a Disability at Barnard and Teacher's College**
- **Teachers College Office of Access and Services for Individuals with Disabilities:** 163 Thorndike Hall http://www.tc.columbia.edu/oasid | 212-678-3689
- **Barnard Office of Disability Services:** 008 Milbank Hall http://www.barnard.edu/disabilityservices | 212-854-4634

## OFF-CAMPUS RESOURCES**

Unless otherwise noted, all facilities listed below are available 24 hours a day.

☽ indicates facilities that are not available 24 hours a day.  **Fees may apply.

### Off-Campus Advocacy, Counseling and Health Services

- **Safe Horizon**
  Sexual Assault Hotline: 212-227-3000
  Domestic Violence Hotline: 800-621-HOPE (4673)
- ☽**Mt. Sinai St. Luke's Hospital Crime Victims Treatment Center** 212-523-4728 *by appointment only* (sexual assault advocates available 24 hours a day).
- **New York-Presbyterian/CUMC Emergency Room** 212-305-6204
- **New York City Anti-Violence Project** 212-714-1141

### Neighboring Hospitals with SAFE Centers:

- **Mt. Sinai St. Luke's Hospital** *(CHP Group)* 1111 Amsterdam Avenue at West 113th Street
- **Mt. Sinai West Hospital** *(CHP Group)* 1000 10th Avenue at West 58th Street
- **Beth Israel-Petrie Campus** *(CHP Group)* 281 First Avenue at East 16th Street
- **Bellevue Hospital** *(HHC Group)* 462 First Avenue at East 27th Street
- **Harlem Hospital** *(HHC Group),* 506 Malcolm X Boulevard at West135th Street
- **Metropolitan Hospital Center** *(HHC Group)* 1901 First Avenue at 96th Street
- **Mount Sinai Medical Center** *(Mount Sinai),* 1 Gustave L Levy Place (Fifth Avenue) at East 98th Street
- **New York-Presbyterian - Columbia** *(NYP)* 622 West 168th Street
- **New York-Presbyterian - The Allen Pavilion** *(NYP),* 5141 Broadway at West 221st Street
- **New York-Presbyterian - Weill Cornell** *(NYP),* 525 East 68th Street at York Avenue

Mt. Sinai St. Luke's Hospital's Emergency Room at 1111 Amsterdam Avenue (West 113th Street between Amsterdam and Morningside Avenues) and New York-Presbyterian Hospital/CUMC Emergency Room at 630 West 168th Street (at Broadway) can provide treatment for injuries and for potential exposure to sexually transmitted infections, emergency contraception, and other health services. They can assist in preserving evidence or documenting any injuries and have personnel who are specially trained to collect evidence.

### Off-Campus Law Enforcement

- **New York City Police Department** (NYPD)
  Emergency: 911
  26th Precinct: 212-678-1311
- **New York County District Attorney's Office**
  Domestic Violence Unit: 212-335-4308
  Sex Crimes Unit: 212-335-9373
- **Sex Crimes Report Hotline** 212-267-7273

### Additional Government Resources

- The government resources listed here may provide additional assistance for students wishing to file an external complaint of gender-based misconduct or students with inquiries regarding the application of Title IX and its implementing regulations:
  ☽NYC Family Justice Center - Manhattan
  http://www.nyc.gov/html/ocdv/html/help/fjc.shtml
  212-602-2800  80 Centre St New York, NY 10013
- ☽**New York State Office of Victims Services** 1-800-247-8035  https://ovs.ny.gov/
- ☽**Together Against Sexual Violence** http://www.notalone.gov
- ☽**U.S. Department of Education, Office for Civil Rights**
  http://www.ed.gov/ocr
  New York – Region II, 32 Old Slip, 26th Floor New York, NY 10005 646-428-3800
  OCR.NewYork@ed.gov
- ☽**U.S. Department of Justice, Office on Violence Against Women**
  http://www.ovw.usdoj.gov
  145 N St, NE, Suite 10W.121 Washington, D.C. 20530 202-307-6026
- **National Domestic Violence Hotline** 800-799-SAFE
- ☽**National Crime Victim Center** http://www.ncvc.org
  1-800-FYI-CALL (8:30am – 8:30pm )

### Overseas Services

In an emergency, contact the nearest U.S. Embassy or Consulate, or call these numbers:
- From Canada: 1-888-407-4747
- From Overseas: +1-202-501-4444-4747

See the chart on the following page for an explanation of these resources' reporting obligations.

Up-to-date contact information can be found on the University's *Sexual Respect* website at http://sexualrespect.columbia.edu.

| CONFIDENTIALITY PROTECTIONS & REPORTING OBLIGATIONS | | |
|---|---|---|
| Confidential resources will not share information with some exceptions. Exceptions to confidentiality are listed below. Non-confidential resources are required to protect students' privacy to the greatest extent possible and will only disclose identifying information on a need-to-know basis. | | |
| TYPE | PERSONNEL | REPORTING OBLIGATIONS |
| **C O N F I D E N T I A L** | **University Chaplains** (*Ordained Clergy*) | • None, unless acting in a role described below. |
| | **Counseling and Psychological Services** | • If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, this resource must report to County Mental Health officials. (NY Mental Hygiene Law) <br> • If there is reasonable cause to suspect that a minor has been sexually abused, this resource will report to the requisite state officials. (NY Social Services Law) |
| | **Physicians and Other Health Professionals** | • This resource will report incidents on an aggregate periodic basis without any identifying information to the Office to enable the University to understand the existence and extent of the problem. (Title IX) <br> • If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, these resources will report to New York County Mental Health officials. (NY Mental Hygiene Law) <br> • If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify the requisite state officials. (NY Social Services Law) |
| | **Sexual Violence Response & Rape Crisis/Anti-Violence Support Center** | • This resource will report incidents on an aggregate periodic basis without any identifying information to the Office to enable the University to understand the existence and extent of the problem. (Title IX) <br> • If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify University leadership. (NY Social Services Law) <br> • When disclosure may prevent harm to self or others where the danger is imminent (i.e. suicide or homicide) N.Y. [Mental Hygiene] Law <br> • If there is reasonable cause to suspect abuse or neglect of an Incompetent or Physically Disabled Person (defined as persons who are unable to care for themselves because of physical disability, mental disease or defect).  (Article 260, NYS Penal Law & Soc. Services) |
| | **Disability Services** (*for Columbia only*) | • This resource will report incidents on an aggregate periodic basis **without any identifying information** to the Office to enable the University to understand the existence and extent of the problem. (Title IX) <br> • If a patient's clinical state poses a substantial risk of harm to the patient or others, as manifested by conduct, these resources will report to New York County Mental Health officials. (NY Mental Hygiene Law) |
| | **University Ombuds Offices** | • If there is reasonable cause to suspect that a minor has been sexually abused, this resource will notify University leadership. (NY Social Services Law) |
| **A D D I T I O N A L   R E S O U R C E S  ( N O N  C O N F I D E N T I A L )** | **Gender-Based Misconduct Office** (*within Student Conduct and Community Standards – "the Office"*) <br><br> **Title IX Coordinators** | • Unless a complainant requests otherwise and the request is granted, this resource will investigate and respond to reported gender-based misconduct incidents (Title IX) <br> • If the incident may be a crime, this resource will report it without any identifying information to Campus Public Safety for inclusion in the daily crime log and annual statistical report and for issuance of any required timely warning. (Clery Act) <br> • This resource will share information with University personnel who need to know it in order to carry out University policies and procedures |
| | **Public Safety Personnel** | • Public Safety will report to the Office all information received about gender-based misconduct incidents so the University can investigate and respond. (Title IX) <br> • If the incident may be a crime, Public Safety will include it in a crime log and annual crime statistics without identifying the alleged victim. (Clery Act) <br> • If the incident may be a crime and poses a serious or continuing threat, Public Safety will issue an emergency notification or timely warning. (Clery Act) <br> • If there is reasonable cause to suspect that a minor has been sexually abused, Public Safety will notify University leadership. (NY Social Services Law) <br> • Public Safety will share information with University personnel who need to know it in order to carry out University policies and procedures |
| | **Other University Personnel** | • Will report to the Office all information received about gender-based misconduct incidents so the University can investigate and respond. (Title IX) <br> • If the incident may be a crime, a "campus security authority" will report it without any identifying information to Campus Public Safety for inclusion in the daily crime log and annual statistical report and for issuance of any required timely warning. (Clery Act) |
| | **Disability Services** *Barnard and Teacher's College* | • If there is reasonable cause to suspect that a minor has been sexually abused, other University personnel will notify University leadership. (NY Social Services Law) <br> • Other University personnel will share information with University personnel who need to know it in order to carry out University policies and procedures. |

**Gender-Based Misconduct Office**
**Student Conduct and Community Standards**
800 Watson Hall, 612 West 115th Street, 8th Floor, MC 2611
New York, NY 10025
T 212/854-1717 F 212/854-8614
http://studentconduct.columbia.edu

Effective August 29, 2017