# EXHIBIT C

**COLUMBIA UNIVERSITY**
IN THE CITY OF NEW YORK

STUDENT CONDUCT AND COMMUNITY STANDARDS

### SENT BY JERI HENRY VIA MAXIENT ON BEHALF OF THE HEARING PANELISTS

April 20, 2018

Sent electronically to █████@columbia.edu

Dear Mr. █████████

On April 19, 2018, the Hearing Panel ("the Panel") convened to determine whether you engaged in behaviors that violate the Columbia University Gender-Based Misconduct Policy and Procedures for Students ("the Policy"). Specifically, it was alleged that you engaged in two instances of Sexual Assault: Intercourse as defined in the Policy, with the bases for lack of affirmative consent being both incapacitation and the use of physical force.

The Panel participated in the fair, thoughtful, and thorough procedure as it is outlined in the Policy. In considering the allegations, the Panel reviewed and assessed the information available through the investigative and hearing processes. In applying the preponderance of the evidence standard, the Panel finds you responsible for both allegations of Sexual Assault: Intercourse, including the use of physical force.

Like the Investigative Team, the Panel first considered whether each instance of sexual intercourse occurred and then determined whether the Complainant provided affirmative consent to engage in the sexual activity. It is not disputed that you and the Complainant engaged in "vaginal intercourse (penis to vagina) on August 26, 2017 at one point between approximately 3:00 a.m. and 10:00 a.m. inside █████████ bedroom" (p. 79).

You maintain that you and the Complainant did not engage in "sex inside of [your] bedroom on August 26, 2017, at one point between approximately 3:00 a.m. and 10:00 a.m." (p. 79 ) because your bed is not "big enough for two people" (p. 26). The Investigative Team concluded, in fact, the size of the bed does not preclude the ability to engage in sexual activity as you suggest. Moreover, you contradict your own assertion with a statement regarding your body positioning in your own bed in your bedroom while engaged in sexual activity with the Complainant (See generally p. 26). Specifically, you describe lying with the Complainant "side by side… perpendicular" to the head of your own bed while engaging in sexual activity (p. 26). As such, the Panel agrees with the Investigative Team's conclusion that based on the totality of available information and the credibility assessment, there is a preponderance of evidence that sexual intercourse (penis to vagina) occurred inside your bedroom.

Second, the Panel assessed whether affirmative consent was provided to engage in sexual intercourse, with consideration given to the Complainant's incapacitation and your use of force.

Per the Policy, the Panel reviewed the available information from the perspective of a sober, reasonable person in the Respondent's position. In considering the Complainant's capacity, the Panel noted the Investigative Team's analysis of the Complainant's deteriorating behavior, such as texting Witness #1 in ███████ her description of experiencing a "blackout with like glimpses of memory" after approximately 1:15 a.m. on August 26, 2017 (p. 13), and your observation of the Complainant getting out of the taxi on the way to your apartment without explanation, and then re-entering the cab (p. 25). However, Witnesses also observed the Complainant to have engaged in a political debate outside at the ███████ (p. 38), walked and stood

normally (p. 23-26, p. 29, p. 35, p. 50, et al). Moreover, by the Complainant's own description, she remembers confronting you about your fiancée, telling you "No" repeatedly, and making statements or asking questions in an attempt to thwart the sexual activity (See generally p.14). While these circumstances are concerning, the Panel agrees with the Investigative Team that there is insufficient information to conclude the Complainant exhibited objective and reasonably apparent indications that she was incapacitated during the sexual intercourse at your apartment.

Next, the Panel considered whether you used force to engage in sexual intercourse with the Complainant. As you requested during the hearing, the Panel reexamined the relevant pictures of furniture. The Panel further considered that by your own account, you did not observe the Complainant bumping, crashing into or hitting the furniture, causing significant bruising to her face, shoulder, arms, and thigh (Exhibits #2, #3, #12, #13, #17, #18, #19, #21, and #23). Additionally, the Panel carefully reviewed these documents and recognized that the expert reports reflected the viewpoints of the parties who retained them. In consideration of the totality of the circumstances, the Panel agrees with the Investigative Team's conclusion that the most likely explanation for the Complainant's bruising is that you inflicted the bruises while having sexual intercourse with the Complainant. As such, the Panel is in agreement with the Investigative Team that the Complainant did not provide her affirmative consent and that you used physical force to engage in sexual intercourse in your apartment on the morning of August 26, 2017.

Finally, you contested the credibility of the Complainant, compared to your own credibility. However, your statements:

1. Conflate information provided by witnesses (e.g. only Witness #8 observed you and the Complainant kissing on the dance floor, as described on p. 50; Witness #5 "denied ever seeing the Complainant or Respondent kissing" (p. 45); and Witness #6 said "he '[did not] remember seeing' the two kiss or otherwise engage in sexual activity together" (p. 46));
2. Vary in describing your own alcohol consumption and subsequent level of capacity to the Investigative Team (See generally p. 70);
3. Contradict your own Witnesses' statements (e.g. you originally stated that your girlfriend/Witness #12 incurs bruises after consensual sex on p. 29, which she then denied on p. 56, before clarifying you meant hickies in an email to the Investigative Team (Exhibit #22)); and
4. Provide repeated factually incorrect information to the Investigative Team (e.g. you volunteered and repeatedly told the Investigative Team that the Complainant wore high heels to the club on p. 23, p. 25-26, and p. 29, and in fact, she was wearing flat sandals that evening).

These statements underscored the Investigative Team's concerns about your credibility and called into question the accuracy and plausibility of your narrative. The Panel concurs with the Investigative Team and finds that you were not credible on many accounts throughout your narrative; thus, the Panel does not find a preponderance of the evidence to support your account.

Throughout the investigative and hearing processes, the Complainant acknowledged the gaps in her memory about the events of the evening, but her narrative remained consistent and is largely supported by the documentary evidence and Witness statements. Like the Investigative Team, the Panel finds the Complainant's account more compelling, logical, and credible.

For these reasons, and in full agreement with the Investigative Team's recommendation, the Panel finds you responsible for two violations of the Policy's definition of Sexual Assault: Intercourse and specifically, for the use of physical force to engage in sexual intercourse (penis to vagina) without the Complainant's affirmative consent.

Please note the interim measures detailed in your initial notice letter dated September 20, 2017, including the no contact directive, remain in effect. As before, you may request a prompt and reasonable review of the need for or terms of any of the aforementioned directives, and submit evidence in support of this request. All requests for review must be addressed to Jeri Henry, Associate Vice President of Student Conduct and Community

Standards, and submitted online here ▮▮▮▮▮▮.

As detailed in the policy, the information in the investigative report and all documentation, including the recording of the Hearing Panel, will be sent to ▮▮▮▮▮▮, Dean ▮▮▮▮▮▮▮▮▮▮. In accordance with the policy, Dean ▮▮▮▮▮▮ will render sanctioning decisions to each party within three business days of the date on this letter, Wednesday, April 25, 2018.

Additionally, you and/or the other party may submit a written impact statement to Dean ▮▮▮▮▮▮ for his consideration. The written statement must be completed by you and be no more than five single-spaced typed pages, using 12 point Times New Roman font and 1-inch margins. If you have not already done so, you must submit your impact statement through the online form by April 23, 2018 at noon. Please note that neither party may engage in communication with Dean ▮▮▮▮▮▮ outside this process.

If you feel like you would like additional support at any time, your case manager can assist by connecting you to the appropriate resources, including Counseling and Psychological Services.

Sincerely,


Spencer Bennett
Associate Director
Student Conduct and Community Standards

Kati Cadenhead
Associate Director
Student Conduct and Community Standards

Tikola Russell
Associate Director
Student Conduct and Community Standards

CC: Marjory Fisher, Associate Vice President, Title IX Coordinator
▮▮▮▮▮▮▮▮, Dean ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮, Attorney-Advisor
Student File