# EXHIBIT D

**COLUMBIA UNIVERSITY**
IN THE CITY OF NEW YORK

**SENT ELECTRONICALLY VIA MAXIENT BY JERI HENRY ON BEHALF OF THE APPELLATE PANEL**

May 14, 2018

███████████████

*Sent electronically to* ███████@columbia.edu

Dear Mr. ██████████████

We are responding to your appeal of the decision rendered by the Hearing Panel on April 20, 2018 and the sanction issued by Dean ████████████████████████████ on April 24, 2018. After reviewing the information provided, the Hearing Panel accepted the report by the Investigative Team and determined that you engaged in behavior that met the definition of Sexual Assault: Intercourse, specifically for the use of physical force to engage in sexual intercourse (penis to vagina) without the Complainant's affirmative consent, violating the Columbia University Gender-Based Misconduct Policy and Procedures for Students.

Following the Hearing Panel's decision, Dean ████████████████████████ acted as the Sanctioning Officer in this matter. Upon the Hearing Panel's finding that you were responsible for Sexual Assault: Intercourse, Dean ████████ reviewed the file and in consideration of the serious nature of the violations, determined that you were expelled ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

Following the finding of responsibility and sanction of expulsion, you alleged three grounds for appeal based upon procedural errors that you allege occurred, including (1) that the Investigative Team violated the Policy to conduct a "thorough investigation" by failing to ask the Complainant about many discrepancies in her narrative and by only considering supporting evidence in assessing her credibility; (2) that the Report write-up did not permit the Panel to make an informed decision; (3) that the burden of proof was incorrectly shifted to you and that the Investigative Team excluded your expert reports for inappropriate reasons and, just as important, failed to address the issues raised in those reports. In addition, you assert that the sanction imposed was excessive. We will address each of these contentions in turn.

As you know, we can intervene in such cases only if we find a procedural error, and the appealing party must identify with specificity each alleged error within the investigative and/or hearing process and the ways in which the specified error(s) substantially affected the decision of the Hearing Panel and/or Sanctioning Officer to the detriment of the appealing party; if there is new information that was not available at the time of the investigation or hearing that may change the determination or sanction; and/or if the sanction is excessive or insufficient. Disagreement with the finding or sanction is not, by itself, a ground for appeal.

We have given significant thought to your appeal, examined all of the information you provided, and reviewed the relevant parts of the case file.

First, we find no merit in your arguments that various procedural errors occurred during the investigation, and during the Panel's consideration, which affected the investigation and the sanction in this case.

Your first argument asserts that the Investigative Team violated the Policy by failing to conduct a thorough

investigation, because they did not ask the Complainant about many discrepancies in her narrative and by considering only supporting evidence in assessing her credibility. Your appeal on this ground cites several questions the Investigative Team should have asked the Complainant, and mentions several conclusions reached by the Investigative Team, which you believe are inconsistent with the evidence. First, although you characterize these inconsistencies as evidence of a procedural error, we find that the argument you make is simply an attempt to have the panel re-consider the facts.   We would like you remind you that the purpose of an appeal is not to initiate a review of substantive issues of fact, or to embark on a "de novo" determination of whether a violation of the Policy has occurred. The Appellate Panel is strictly limited to determining if an appeal should be granted based on the above three grounds for appeal. We find that your arguments under "Violation 1" are a restatement and re-argument of the facts as you see them and of your position in this case. Second, you had an opportunity to pose additional questions to the Complainant, which you did, and which the Complainant answered at the Hearing Panel. The questions, which you posed in this section of your appeal, arguing that the Investigative Team should have asked them, were not among the questions that you could have submitted earlier in the process for the Complainant to answer.

The second procedural error that you cite states that the Report write-up did not permit the panel to make an informed decision because the way the report was put together was as a series of witness interviews, with no synthesis of the parties' multiple interviews. In fact, you stated, "there is no summary analysis providing a clear picture of each party's narrative through a syntheses of the party's multiple interviews, the testimony of all the witnesses and evidence and analysis of the inconsistencies in testimony and evidence." You go on to say that there were numerous mis-statements of the records on key items, and that therefore, the process for the Panel review was "inherently flawed."

With respect to your assertion that there was no summary analysis or synthesis of the evidence, we disagree, and we direct your attention to pages 57-83 of the Gender Based Misconduct Investigative Report, entitled "Findings and Analysis." In this section, the Investigative Team assessed the credibility of the parties and each of the witnesses, based upon their statements and the presence of any corroborating evidence. Then the Investigative Team assessed whether sexual intercourse occurred, and whether or not there was affirmative consent for sex. The analysis continued, citing both statements in the record and evidence collected, with an assessment of whether or not you had sex with the Complainant while she was incapacitated without her affirmative consent, or whether you had sex with her by forcing her to engage in sexual intercourse without her affirmative consent.

The Investigative Team found that the Complainant was not incapacitated when you had sexual intercourse with her, and thus you were not found responsible for violating the policy based upon lack of the Complainant's consent due to incapacitation. The Investigative Team then addressed the issue of whether or not there was sufficient evidence to conclude that you used physical force to engage in sex.  The Investigative Team concluded that based upon a credibility analysis of the parties, covered in the over 20 pages of findings and analysis, they credited the Complainant's memory of the force used.

In addition, the Investigative found as corroboration for her account the photographs of her extensive bruising taken at the hospital, and the circumstantial evidence that the bruising occurred while she was with you, to conclude that you did use force, and that you therefore violated the Policy by doing so. We find that your statement that there was no summary analysis is without merit. Your assertion that the Panel was not provided with a "sufficient roadmap" and had "insufficient time to go through the record" to make their determination is similarly flawed and is completely without any evidence to support it.

The third argument in your appeal is that "the burden of proof was incorrectly shifted to me." You go on to say:

> The Policy requires the University to prove the case by a "preponderance of the evidence" and explicitly provides "the Respondent is presumed not responsible….The burden is not on the Respondent to prove that they did not engage in gender-based misconduct." Despite this clear Policy

rule, the Investigative Team used bias-motivated generalizations to shift the burden of proof to me, explicitly stating, "It is hard to fathom why the Complainant would subject herself to a long and invasive process . . . if she merely engaged in consensual sex but regretted it afterwards." (R61)

We disagree that the Investigative Team used "bias motivated generalizations" to shift the burden of proof to you. First, the statement that you quote above, reflects the Investigative Team's view that it would make little sense for the Complainant to engage in this very difficult investigative process, and to then remain with it for the better part of an academic year, if this was simply "regrettable sex." We find that the Investigative Team's consideration of this hypothesis, and whether or not the Complainant in fact fabricated a devastating accusation against someone with whom she had only a positive relationship, was a reasonable inquiry. We believe that the Investigative Team was within its duty to consider these questions, and we agree with their finding that it did not make sense that in light of these facts, she concocted this story with no discernable reason or motive.  It is our position that examining this issue does not qualify as a "bias motivated generalization," nor does it consist of burden-shifting. It is also noted that this particular conclusion was in the Complainant's credibility assessment, and not in yours; thus in no way was the burden thereby shifted to you in this inquiry.

In fact, if the Investigative Team failed to explore why the Complainant made this accusation, and followed through with a visit to the hospital, a rape kit, evidence collection to determine whether or not she had been drugged, a later visit to Columbia Health, multiple conversations with investigators she did not know to discuss the most personal and traumatic details of her life, and submission of her medical record to you, your lawyers and your experts -- that is, if this was truly a night of consensual sex where she was an aware and active participant -- we find that it the investigators would have abjectly failed in their duty to comprehensively examine this case. For you to characterize this inquiry as "burden shifting" is a mis-statement of the role of the investigators, and the Panel that served in this case.

Nor do we find that the Investigative Team's questions to you about whether or not you witnessed the Complainant bumping or crashing into things, or an inquiry as to whether or not there was anything else that you could provide other than an inventory of available furniture that she could have bumped into during the night, was burden-shifting. For example, if you saw her fall or crash into furniture, you would have wanted the Investigative Team to know that. The question must be asked in order for them to know whether you had any clue as to why the Complainant in this case had extensive bruising, indicating that she was subjected to trauma while she was with you. We find that this line of inquiry was simply following the investigative leads to their logical conclusion. Failing to do so would have been a dereliction of their investigative duties. We do not find this to be "burden shifting;" nor do we find it to be a procedural error.

You have no burden of proof in this case; nor does the Complainant. The burden is on the Investigative Team to determine whether it is more likely than not that you violated Columbia's Policy. By asking questions, some of them exploring either party's motive to lie, or the source of the traumatic injuries present in this case, does not "shift the burden." It is our position that these questions must be asked and answered to make the determination of whether or not there is a preponderance of evidence in this case that you violated the University's policy.

Finally, you contend the "the Investigative Team excluded [your] expert reports for inappropriate reasons, and, as important, failed to address the issues raised in those reports."   We find that the expert witness testimony was in fact included as an exhibit in this case for the Panel to consider. Their findings were summarized in the report like any other witness's testimony. In addition, the Investigative Team noted the experts' value in the reports, just as the Investigative Team would do in credibility analysis of other witnesses

in this case. We find that the Investigative Team simply noted that each party paid their experts, that neither had ever spoken to the parties, and had limited access to much of the evidence available to the Investigative Team that was derived from speaking in person to parties and witnesses. In commenting on this evidence, the Investigative Team noted their own assessment of the probative value of these experts just as they would assess any other witness. However, the reports were attached with an instruction to the Panel to consider these reports as they wished. It is notable that your expert on incapacitation opined that the Complainant in this case was not incapacitated. The Investigative Team, and ultimately the Panel agreed with this finding. We believe that in whatever light the Investigative Team cast the value of these reports to the Panel, they were free to consider them or to value them to the extent that they wished to do so. Thus, we find that no procedural error was committed here.

Finally, we considered your contention that your sanction was too severe. With respect to the sanctioning decision, we considered the various criteria that the Policy dictates the Sanctioning Officer should consider, one of which is the impact on the Complainant, and in addition, the specific gender-based misconduct at issue. In this case, we find that the conduct had a significant impact on the Complainant and we find that your misconduct was abhorrent. Your conduct was reckless, and you exhibit an obliviousness to the evidence that you used force in order to have sex with her. We believe that the behavior does not fit within the community standards of Columbia University, and we agree with Dean ▮▮▮▮▮ that this is a ground for expulsion.

We have found, based upon a careful review of all of the evidence available to us in this case, that the sanction was not excessive. The nature of the behavior is such that it renders you unfit to continue being a member of our academic and intellectual community. We find that perhaps the Complainant in this case expressed it best in her account that she submitted in her initial report, shortly after this incident:

> I have a glimpse of a memory of me with my attacker in a taxi or an uber, at the time I lived very close to his place on the Upper East Side so it would make sense for me to take a taxi with him in that direction. I don't remember how we got up to his apartment but I remember at one point thinking "what am I doing back here?" Then all I remember are three clear memories. I remember being in a bedroom that I know is not his, with a bed that has a wooden frame. And I am still wearing my dress but no underwear, I am scared, I lie face down on the bed, I get on all fours and try to crawl away but he flips up my dress and inserts me from behind. I was so scared he would try to have anal sex with me because I knew that would hurt even more. The second memory is me saying: "why are you doing this? I thought we were friends. What about your girlfriend?" and him answering: "I have always wanted this." I don't remember where we were exactly in the apartment at that time but I remember our words so clearly because they were so frightening. The last memory I have of the night is in his bedroom in the apartment, I am still wearing the dress, he is on top of me, grunting and saying yeah yeah. And I remember trying to fight him off but not being able to and then I seem to have passed out. The next morning I woke up still feeling disoriented and very distraught…
>
> …. After this incident I have felt more anxious, unable to eat properly, ashamed, helpless and weak. I have gone to see SVR on two occasions to receive assistance about counseling and the reporting process. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This attack has affected my schoolwork, I haven't been able to attend all classes, I feel distant when I attend and I cannot focus on my readings. This incident has also had financial repercussions on my family since my mom flew in to New York as soon as she heard what had happened to support me in the immediate aftermath, she stayed with me for two weeks. I had multiple physical injuries after the incident as well, below I will attach some pictures of my bruising, I also had bruises on my thighs. I went to Medical services at Columbia the following week since I kept experiencing piercing headaches, the right side of my head right above my ear was tender for a week afterwards. I don't remember when I received a blow to the head….

We determined that the information that was collected through this investigation included a compelling and deeply concerning account by the Complainant, including an account of a violent sexual assault. However, we considered your assessment of the impact of this case, and this process upon you, stated as follows:

> Throughout this proceeding, I have felt frustrated, deeply betrayed by the system, anxious, and extremely depressed. I have had frequent, terrible nightmares. I sometimes spend hours awake at night, when in the past I never had trouble sleeping. I now suffer from perseveration. According to ███████████████████████████████████████████ because of the accusations and being treated like a criminal.

We learned from your impact statement about your current psychological state, the fact that you cannot sleep, that your hair is falling out, that you cannot eat and that your motivation and your family have suffered. This is very unfortunate. We understand that you had to change your academic plans due to the investigative process. However, after reviewing all of your statements, we hope that you take the time to reflect upon the harm that your behavior may have caused the other party. We disagree with your view that the sanction of expulsion is excessive. We find that this case is among the most violent and the least ambiguous of the cases that we have seen as Panel members. You ignored the Complainant when she pushed you away, you inflicted bruises upon her body, and you disregarded her vulnerable state, when you forced her to have sex with you. Considering the Complainant was someone who trusted you and cared about you as a good friend, your behavior is extremely concerning.

The Appellate Panel finds that your decision to engage in such behavior unacceptable and that your appeal is without merit.   For a member of the Columbia University community to commit such an act is counter to our expectations and will not be tolerated. As such, the Appellate Panel is upholding the Hearing Panel's decision of responsibility, and the sanctioning decision rendered by Dean ███████    We hope that with time, you will have an opportunity to continue to take stock of the areas in your life that may have contributed to your conduct and develop ways to address them.

Sincerely,

Professor ███████
Dean ████████████████████████████

Professor ███████
Dean ████████████████████████████████████████████████████

Professor ███████
Dean, ████████████████████████████████
████████████████



CC: Marjory Fisher, Associate Vice President, Title IX Coordinator
　　　███████████, Dean ███████████████████████
　　Jeri Henry, Associate Vice President
　　███████ Attorney-Advisor
　　Student File